2003-NMCA-131

79 P.3d 1118

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Raymond HERNANDEZ, Defendant–
Appellant.**

No. 22,886.

Court of Appeals of New Mexico.

Sept. 17, 2003.

Certiorari Denied, No. 28,310, Nov. 4, 2003.

Patricia A. Madrid, Attorney General, Arthur W. Pepin, Assistant Attorney General, Santa Fe, NM, for Appellee.

John B. Bigelow, Chief Public Defender, Laurel A. Knowles, Assistant Appellate Defender, Santa Fe, NM, for Appellant.

## *OPINION*

FRY, Judge.

{1} Defendant Raymond Hernandez appeals his convictions for robbery, disposing of stolen property, and tampering with evidence. The convictions resulted from an incident in which Defendant robbed a bank and then gave some of the money away. He challenges the sufficiency of the evidence for the robbery conviction, contending there was no evidence from which the jury could have inferred a threat of force or violence. With respect to the conviction for disposing of property, Defendant argues that the relevant statute does not apply to his actions of giving away and spending money because money is not property within the meaning of the statute. In addition, he contends that even if the statute applies to money, his actions did not constitute "disposing." Finally, Defendant argues that the trial court erred in refusing to instruct the jury on an intoxication defense with respect to his specific-intent crimes. We affirm.

## BACKGROUND

{2} Defendant's convictions arise from a theft of cash from a bank in Tularosa, New Mexico. On the day of the robbery, Defendant had driven to Tularosa with his girlfriend, Sheila Michel, and her seventeen-year-old daughter, Leslie. Prior to the theft, the two adults consumed beer at a friend's home. Then Defendant drove them all to the bank so that he could obtain money. Defendant entered the bank alone and attempted to cash a check from a Ruidoso bank. The teller, Jeremy Nowell, refused to cash the check because Defendant did not have an account at that bank. Defendant left the bank.

{3} Nowell testified that a short time later Defendant returned to the bank, approached the counter, and told Nowell that he "wanted everything out of [the] top drawer." Accord-

ing to Nowell, Defendant told him not to set off an alarm. Nowell was able to see a pink piece of paper in the palm of Defendant's left hand, but Defendant did not display the paper or hand it to Nowell. Nowell complied with Defendant's request for the drawer contents by scooping money from the drawer into a sack. The money included a stack of marked bills. In addition, Nowell included a red dye pack that was set to explode when removed from the building. Throughout this process, Defendant's right hand remained out of Nowell's view. After Nowell had placed what later turned out to be $2,717 in the sack, Defendant directed him to stop. Defendant then turned and exited the bank.

{4} Another teller, Valerie Delgado, came out of the restroom just as Defendant took the sack from Nowell and departed the bank. Delgado watched as Defendant ran across the parking lot, the dye pack exploded, and Defendant dropped some of the money. A relief teller, Elizabeth Chavez, observed these events from a different angle as she pulled into the parking lot. Chavez saw Defendant jump when red smoke emerged from the sack that he was carrying, and she then saw him run behind a nearby post office. Chavez followed and observed Defendant get into his pickup and drive away. She wrote down the license plate number and provided it to the police.

{5} Defendant then drove himself and his passengers to a nearby café to purchase hamburgers. On the way there, he gave $400 to Michel and $7 to Leslie, saying that he wanted to help them out. At the restaurant, Defendant paid for their meals. The group then left the café with their food, and as they began driving away, the police stopped them. The police confiscated money from both Michel and Leslie, and also found money tucked into the front seatbelt area of the vehicle. In total, the police recovered $1,407, including the money found in the bank parking lot; $1,310 was never recovered.

## DISCUSSION

### Sufficiency of Evidence for Robbery Conviction

■ {6} "Robbery consists of the theft of anything of value from the person of another

or from the immediate control of another, by use or threatened use of force or violence." NMSA 1978, § 30–16–2 (1973). Defendant challenges his robbery conviction claiming there is no evidence that he used or threatened to use force or violence in the process of taking the money. Reviewing a sufficiency of the evidence challenge on appeal, "[w]e view the evidence in the light most favorable to supporting the verdict and resolve all conflicts and indulge all permissible inferences in favor of upholding the verdict." *State v. Apodaca*, 118 N.M. 762, 766, 887 P.2d 756, 760 (1994). The question we must resolve is whether the trial court's "decision is supported by substantial evidence, not whether the court could have reached a different conclusion." *In re Ernesto M., Jr.*, 1996–NMCA–039, ¶ 15, 121 N.M. 562, 915 P.2d 318. As discussed below, the evidence presented at trial permits the inference that Defendant carried out the theft through the threatened use of force or violence.

{7} Defendant approached Nowell, who had previously refused to cash his check, and stated that he "wanted everything" from Nowell's money drawer. During this confrontation, Defendant's left hand contained a note that he pointed at the drawer. Defendant's right hand remained out of Nowell's view. Defendant told Nowell not to set off an alarm. Viewing this evidence in the light most favorable to the verdict permits the inference that Defendant was threatening force if Nowell did not comply with his demands.

{8} Defendant contends that although there was evidence that Nowell was scared, there was no evidence that Defendant threatened force. According to Defendant, Nowell's fear was based solely on "things he didn't see or hear, things he *feared* existed." We disagree.

■ {9} A robbery conviction requires that the "force or threatened use of force must be the lever that serves to separate the property from the victim." *State v. Hamilton*, 2000–NMCA–063, ¶ 8, 129 N.M. 321, 6 P.3d 1043. Where a defendant points a note at the teller's cash drawer, keeps his other hand hidden from view, states that the teller

should give him everything, and directs the teller not to use the alarm, a reasonable fact finder could conclude that this combination of actions threatened force and caused the teller to hand over the contents of the cash drawer. Contrary to Defendant's contentions, this evidence reflects more than a "mere demand" for money. Defendant did not explicitly threaten violence with his words, but a threat can be inferred from his actions. *See State v. Moore*, 269 Kan. 27, 4 P.3d 1141, 1146 (2000) (affirming robbery conviction where the defendant approached victim in remote, poorly lit parking lot and demanded car keys but made no verbal threats); *State v. Duggar*, 710 S.W.2d 921, 922 (Mo.Ct.App.1986) (finding threat of force during convenience-store robbery where the defendant, with one hand concealed in jacket, stated in a low key manner that he would like money from cash register); *State v. Hall*, 327 Or. 568, 966 P.2d 208, 211 (1998) (recognizing that jury could find implicit threat of force where the defendant entered restaurant late at night, dressed in a manner that disguised his identity, and told employee to give him money from cash registers).

{10} We are equally unpersuaded by Defendant's argument that even if his actions constituted an implied threat, the statute does not extend to threats by implication. Neither statutory language nor case law limit the term "threat" to explicit, verbal threats of force.

{11} Finally, we are not persuaded by Defendant's reliance on *State v. Sanchez*, 78 N.M. 284, 285, 430 P.2d 781, 782 (Ct.App. 1967). This Court likened that case to pickpocket or purse snatching cases, and we reversed the defendant's conviction because there was no evidence indicating that force or threat of force caused the victim to part with his wallet. *Id.* We noted that the issue is "whether the force was sufficient to compel the victim to part with his property." *Id.* In that case, the evidence was that the defendant took the wallet from a passive victim, not that the victim relinquished the wallet out of fear. *Id.* at 284–85, 430 P.2d at 781–82. In contrast here, there are all of the usual trappings of a bank robbery, except that Defendant did not explicitly show a weapon, and there was evidence that Nowell turned over the money in response to Defendant's actions.

## Applicability of Receiving Stolen Property Statute

{12} Defendant advances a two-fold challenge to his conviction for disposing of stolen property, which is one aspect of our statute prohibiting the receipt of stolen property. NMSA 1978, § 30–16–11 (1987). First, he contends that under the relevant statute the term "property" does not include money but instead refers exclusively to goods with an exchangeable market value. Second, he claims that even if the statute applies to money, his actions did not constitute "disposing" within the meaning of the statute. Statutory interpretation presents a question of law that we review de novo on appeal. *State v. Rowell*, 121 N.M. 111, 114, 908 P.2d 1379, 1382 (1995). For the reasons that follow, we reject Defendant's interpretation of the statute.

{13} Preliminarily we note that New Mexico permits convictions for both robbery and disposing of the property stolen in that same robbery. *State v. Tapia*, 89 N.M. 221, 223, 549 P.2d 636, 638 (Ct.App. 1976). Turning now to the meaning of "property" within the statute, "our primary goal is to give effect to the intent of the legislature." *State v. Saiz*, 2001–NMCA–035, ¶ 2, 130 N.M. 333, 24 P.3d 365. "To determine legislative intent we look first to the plain language of the statute." *Id.*

### Money is Property

{14} The language prohibiting disposal of stolen property provides in relevant part that "[r]eceiving stolen property means intentionally to receive, retain or *dispose of* stolen property knowing that it has been stolen or believing it has been stolen." Section 30–16–11(A) (emphasis added). Section 30–16–11(C)(2) provides: "For the purposes of this section: ... 'stolen property' means any property acquired by theft, larceny, fraud, embezzlement, robbery or armed robbery." The statutes on larceny, fraud, embezzlement, and robbery provide further guidance because they all refer to property

in identical terms, as "anything of value." NMSA 1978, § 30–16–1 (1987) (larceny); NMSA 1978, § 30–16–6 (1987) (fraud); NMSA 1978, § 30–16–8 (1995) (embezzlement); § 30–16–2 (robbery). Importantly, the statutes on larceny and fraud establish the degree of the offense on the basis of the "value of the property" stolen or misappropriated. Sections 30–16–1,–6. Reading these statutes and the receiving stolen property statute together, we conclude the legislature intended that "property" is "anything of value." *See Roth v. Thompson,* 113 N.M. 331, 334, 825 P.2d 1241, 1244 (1992) ("A fundamental rule of statutory construction is that all provisions of a statute, together with other statutes in pari materia, must be read together to ascertain the legislative intent.").

{15} Moreover, common sense supports the conclusion that "anything of value" includes money. *See State v. Richardson,* 113 N.M. 740, 741, 832 P.2d 801, 802 (Ct.App. 1992) (stating that a common-sense reading of a statute will suffice where language is clear and unambiguous). In addition, our case law applies the larceny, fraud, embezzlement, and robbery statutes where the thing of value wrongly obtained was money. *See State v. Clifford,* 117 N.M. 508, 512–13, 873 P.2d 254, 258–59 (1994) (affirming fraud conviction where the defendants misappropriated money through real estate development schemes); *State v. Brooks,* 117 N.M. 751, 752–54, 877 P.2d 557, 558–60 (1994) (analyzing single larceny doctrine in case where the bookkeeper embezzled money from employer); *State v. Williams,* 97 N.M. 634, 635–36, 642 P.2d 1093, 1094–95 (1982) (applying robbery statute to the defendant who stole cash from a grocery store); *State v. Rhea,* 86 N.M. 291, 292, 523 P.2d 26, 27 (Ct.App.1974) (applying larceny statute to the defendant who took money from employer's cash register).

{16} Given the clarity of the relevant statutes and case law, we are unpersuaded by Defendant's assertions that the term "property" is ambiguous. Defendant attempts to interpret "property" based on the fact that the statute does not include the term money, whereas many other statutes refer to "money and property" or "money or property." *See, e.g.,* NMSA 1978, § 10–2–14(F)(1) (1986) (defining "surety bond coverage" as "conditioned on … a proper accounting for all money and property"); NMSA 1978, § 30–36–2(D) (1963) (defining "thing of value" as including "money, property, services, goods and wares" for purposes of Worthless Check Act); NMSA 1978, § 30–43–4 (1980) (referring to "money or property" in statute prohibiting the financing of extortionate extensions of credit). We disagree. The other statutes relied upon by Defendant do not pertain to disposal of stolen property, and we see no ambiguity in the applicable statute. *See In re Gabriel M.,* 2002–NMCA–047, ¶ 11, 132 N.M. 124, 45 P.3d 64 ("If the meaning of the words is unambiguous, we must give effect to that language and no further interpretation is necessary."). We also reject Defendant's suggestion that the only purpose of the statute is to deter the movement of stolen property. Without question, discouraging the sale of stolen property is one "obvious purpose" of the statute. *Tapia,* 89 N.M. at 223, 549 P.2d at 638. However, Defendant offers no authority for the proposition that this was our legislature's sole intent when it enacted Section 30–16–11.

### Defendant's Actions Constituted Disposing

{17} In Defendant's second challenge to his conviction for disposing of stolen property, he contends that even if money is property, his actions did not constitute disposing within the meaning of the statute. In order to uphold Defendant's conviction for the fourth-degree offense of receiving stolen property, we need only decide that transferring money to Michel and Leslie falls within the definition of disposing.

{18} Analyzing the meaning of the statutory language "dispose of stolen property," *Tapia* relied on a dictionary definition to explain that "[t]he ordinary meaning of this language is to transfer, relinquish or get rid of." 89 N.M. at 222, 549 P.2d at 637. When Defendant gave money to Michel and Leslie, he transferred it to them. The parties agree that Defendant gave $400 to Michel, which is an amount sufficient to affirm his conviction for fourth-degree receiving stolen property.

Section 30–16–11(F) (defining receiving stolen property as a fourth-degree felony "when the value of the property is over two hundred fifty dollars ($250) but not more than two thousand five hundred dollars ($2,500)").

**Entitlement to Jury Instruction on Intoxication Defense**

{19} Defendant alleges error in the trial court's refusal to give the jury instruction on intoxication as a defense to the robbery and tampering charges. The trial court refused Defendant's tendered instruction on the basis that although there was some evidence that Defendant had consumed alcohol on the day of the robbery, there was no evidence that Defendant was intoxicated.

{20} Voluntary intoxication provides a defense to specific-intent crimes "where the intoxication is to such a degree as would negate the possibility of the necessary intent." *State v. Lovato,* 110 N.M. 146, 147, 793 P.2d 276, 277 (Ct.App.1990). Consequently, Defendant was entitled to the instruction if there was any evidence supporting it. *See State v. Brown,* 1996–NMSC–073, ¶ 34, 122 N.M. 724, 931 P.2d 69. We review this issue de novo, looking at the evidence "in the light most favorable to the giving of the instruction." *State v. Vallejos,* 1996–NMCA–086, ¶ 28, 122 N.M. 318, 924 P.2d 727, *rev'd in part on other grounds* 1997–NMSC–040, ¶ 2, 123 N.M. 739, 945 P.2d 957.

{21} Defendant presented evidence that he had consumed alcohol, including testimony that he drank beer, and testimony that he smelled of alcohol at the bank. Defendant presented no evidence, however, that he was intoxicated to any degree, let alone to the point that it affected his ability to form the necessary mental state for a specific-intent crime.

{22} Defendant's primary argument on the issue of intoxication, as opposed to mere consumption of alcohol, is that his conduct was impulsive and irrational, and therefore must have been a consequence of intoxication. For example, he points to the fact that he identified himself to Nowell and then, just a few moments later, returned with no mask or disguise and demanded money from Nowell. Defendant claims that this and other impulsive actions subsequent to the crime are evidence of intoxication. We disagree. Defendant offers no case law supporting his argument that impulsive or irrational actions are evidence of intoxication, and he offers no other evidence tending to show intoxication. *Cf. State v. Privett,* 104 N.M. 79, 81–82, 717 P.2d 55, 57–58 (1986) (holding that the defendant was entitled to intoxication defense where there was evidence that the defendant was confused and appeared intoxicated near the time of the crime). "[M]ere evidence that the defendant consumed an intoxicant is not enough" to warrant an intoxication instruction. *State v. Romero,* 1998–NMCA–057, ¶ 26, 125 N.M. 161, 958 P.2d 119. Accordingly, the trial court did not err in refusing to give the instruction. *See Lovato,* 110 N.M. at 148, 793 P.2d at 278 (affirming trial court's denial of intoxication defense to aggravated battery where "[d]efendant [did] not point to any evidence in the record specifically relating to the effect his intoxication had on his ability to form the required intent").

**CONCLUSION**

{23} For the foregoing reasons, we affirm.

{24} **IT IS SO ORDERED.**

WE CONCUR: LYNN PICKARD and RODERICK T. KENNEDY, Judges.