

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | WD76520 |
| | ) | |
| GARY LELAND COLEMAN, | ) | Opinion filed:  September 30, 2014 |
| | ) | |
| Appellant. | ) | |

**APPEAL FROM THE CIRCUIT COURT OF CALLAWAY COUNTY, MISSOURI**
**The Honorable Kevin M.J. Crane, Judge**

Before Division One:  Joseph M. Ellis, Presiding Judge,
Karen King Mitchell, Judge and Anthony Rex Gabbert, Judge

Gary Coleman appeals from his conviction of one count of second degree robbery, § 569.030.  For the following reasons, we vacate Appellant's conviction for robbery in the second degree; enter a conviction for the lesser offense of stealing, § 570.030; and remand the cause to the trial court for re-sentencing consistent with our opinion.

At 9:18 a.m. on October 6, 2012, Appellant walked into a branch office of Bank Star One in New Bloomfield, Missouri wearing sunglasses.  He walked straight up to teller Marla Rothove, rested his forearm on the counter, leaned slightly forward, handed Rothove a plastic grocery sack, and said, "I need you to do me a favor.  Put the money in this bag."  He spoke in a low, serious tone.  Rothove took the bag, opened her

drawer, and put $1,472.00 in the bag. While this was going on, the assistant branch manager, Sharon Holland, approached. When she was a few feet from Rothove, Appellant told her, "Ma'am, stop where you are and don't move any farther." Holland complied with those instructions. Rothove handed Appellant the bag of money, and he ran out of the bank. The entire encounter lasted approximately forty-five seconds.

Appellant was eventually arrested in Texas and extradited to Missouri. When interviewed by the police and shown the surveillance photos of the encounter, Appellant admitted that he was the man in the pictures and that he had taken the money from the bank.

Appellant was subsequently charged as a persistent offender with one count of second-degree robbery, § 569.030.1. After waiving his right to jury trial, Appellant was tried by the court and found guilty as charged. The court sentenced Appellant as a persistent offender to a term of ten years imprisonment.

In his sole point on appeal, Appellant challenges the sufficiency of the evidence to support his conviction for second-degree robbery. "In reviewing the sufficiency of the evidence in a court-tried criminal case, the same standard of review is applied as in a jury tried case." *State v. Beam*, 334 S.W.3d 699, 707 (Mo. App. E.D. 2011). "When a criminal defendant challenges the sufficiency of the evidence to support his conviction, our review is limited to determining whether sufficient evidence was admitted at trial from which a reasonable trier of fact could have found each element of the offense to have been established beyond a reasonable doubt." *State v. Whites*, 402 S.W.3d 140, 142 (Mo. App. W.D. 2013) (internal quotation omitted). In making that determination, this Court "accepts as true all of the evidence favorable to the state, including all

favorable inferences drawn from the evidence and disregards all evidence and inferences to the contrary." **State v. Oliver**, 293 S.W.3d 437, 444 (Mo. banc 2009) (internal quotation omitted). However, "[t]he Court may not supply missing evidence, or give the State the benefit of unreasonable, speculative, or forced inferences." **State v. Buford**, 309 S.W.3d 350, 354 (Mo. App. S.D. 2010) (internal quotation omitted).

"A person commits the crime of stealing if he or she appropriates property or services of another with the purpose to deprive him or her thereof, either without his or her consent or by means of deceit or coercion." **§ 570.030.1**. "Under Missouri law, the offense of stealing is transformed into the greater offense of second degree robbery when the stealing is accomplished 'forcibly.'" **Patterson v. State**, 110 S.W.3d 896, 904 (Mo. App. W.D. 2003); *see also* **§ 569.030.1** ("A person commits the crime of robbery in the second degree when he forcibly steals property."). "A person 'forcibly steals,' thereby committing second degree robbery, if, 'in the course of stealing [as defined in section 570.030]' the person 'uses or threatens the immediate use of physical force upon another person for the purpose of . . . [p]reventing or overcoming resistance to the taking of the property or . . . compelling the owner of such property or another person to deliver up the property." **Patterson**, 110 S.W.3d at 904 (quoting **§ 569.010(1)**). Thus, in order to support a second degree robbery conviction, there must be evidence establishing beyond a reasonable doubt that the defendant used physical force or threatened someone with the immediate use of physical force in order to accomplish the theft.

On appeal, Appellant contends that the evidence did not support a finding that he used physical force or threatened anyone in the bank with the immediate use of

3

physical force during the incident and that the evidence, therefore, does not support his conviction for second-degree robbery. The State concedes that Appellant did not actually use any physical force during the incident but maintains that the evidence supports a finding that Appellant threatened Rothove and/or Holland with the immediate use of physical force. Accordingly, the sole question on appeal is whether the evidence was sufficient to establish beyond a reasonable doubt that Appellant threatened the immediate use of physical force against one or both of the two ladies in order to compel Rothove to give him the money in her drawer and/or to prevent resistance to his taking of the money.

To support a conviction for second-degree robbery based upon the threatened use of physical force, there must be evidence of some affirmative conduct on the part of the defendant, beyond the mere act of stealing, which communicates that he will "immediately" employ "physical force" if the victim fails to deliver up the property or otherwise resists his taking of the property.[1] "[T]he threat of physical harm need not be explicit; it can be implied by words, physical behavior or both." *Id.* (internal quotation omitted).

Appellant made only two statements while in the bank. While handing Rothove a plastic bag, he stated, "I need you to do me a favor. Put the money in this bag." And

---

[1] The dissent maintains that the statute does not require any intent on the part of the defendant to threaten anyone. A "threat" is defined as "[a] **communicated intent** to inflict physical or other harm on any person or property" or "[a] **declaration of an intention** to injure another or his property by some unlawful act." **Black's Law Dictionary** 1480 (6th ed. 1990) (emphasis added). Thus to threaten someone, an individual must affirmatively communicate their intent to do harm to the victim. Moreover, for purposes of "forcibly stealing property," the communication of the intent to do harm must be made for the purpose of obtaining property against the victim's will. Accordingly, the statutory definition requires proof that a defendant affirmatively communicated his or her intent to use physical force against the victim and that the defendant's purpose in communicating such intent was to prevent or overcome resistance to the taking of the property. *See* **State v. Tivis**, 884 S.W.2d 28, 30 (Mo. App. E.D. 1994) (rejecting the State's argument that evidence that the victim was placed in fear of injury was sufficient to support a conviction for second degree robbery, noting that § 569.030.1 required evidence of the use or threatened use of immediate physical force).

4

when Holland approached, he told her, "Ma'am, stop where you are and don't move any farther." Both statements were made in a low, serious tone.

The State argues in conclusive fashion, without further explanation, that the statements made by Appellant are indistinguishable from handing a teller a note saying, "This is a holdup." *See* **State v. Clark**, 790 S.W.2d 495, 497 (Mo. App. E.D. 1990); **Patterson**, 110 S.W.3d at 904 (noting that a threat of physical force may be implied from the use of phrases like, "This is a holdup," or "This is a stickup."). Contrary to the State's contention, however, these comments are readily distinguishable. "The expression 'holdup,' in its ordinary significance, means a forcible detention of the person held with the intent to commit robbery and implies the necessary force to carry out that purpose."[2] **Clark**, 790 S.W.2d at 497 (internal quotation omitted). Thus, the use of the term itself implies possession of a weapon and the willingness to use force. The ordinary meaning of the terms and phrases used by Appellant do not convey a similar message.

The State also attempts to argue that the statements made by Appellant, when viewed in the context of the situation and considering his demeanor, are sufficient to support a finding that Appellant intended for Rothove and Holland to feel threatened and to believe that he would use physical force against them if they failed to comply with his demands. In support of that assertion, the State cites **United States v. Gilmore**, 282 F.3d 398, 402 (6th Cir. 2002), wherein the 6th Circuit stated that "[d]emands for money [from a bank employee] amount to intimidation because they carry with them an implicit threat: if the money is not produced, harm to the teller or other bank employee may

---

[2] Similarly, "stick up" is defined as "to hold up (as at the point of a gun) in order to rob." **Webster's Third New International Dictionary** 2242 (1961).

5

result." *Id*. *Gilmore*, however, involved the application of a federal bank robbery statute, 18 U.S.C. § 2113(a), which criminalizes the taking of money or property from a federally insured financial institution "by force and violence, or *by intimidation*." (emphasis added) "Whether intimidation under 18 U.S.C. § 2113(a) exists in a particular case is determined by an objective test: whether an ordinary person in the teller's position could reasonably infer a threat of bodily harm from the defendant's acts." *Gilmore*, 282 F.3d at 402.

Missouri does not have a specialized bank robbery statute, and under § 569.010 and Missouri case law, whether a defendant has impliedly threatened the immediate use of physical force for the purpose of overcoming resistance to the taking of property is determined by the defendant's actions rather than the reactions and perceptions of the putative victim. *See* **State v. Carter**, 967 S.W.2d 308, 308-09 (Mo. App. E.D. 1998) (reversing a second degree robbery conviction based upon insufficiency of the evidence to support a finding that the defendant used or threatened the use of force where the defendant approached a woman and her grandson in a parking lot at night, said "Give me your purse," and, after being told the purse was in her pocket, reached into the pocket and removed it before running away; noting that "[t]he evidence presented at trial showed that Defendant never threatened or hit Victim and Defendant did not display a weapon"); **Patterson**, 110 S.W.3d at 904 (noting that "[t]he requisite threat of physical force may be implied from the fact that the defendant displayed a weapon, engaged in behavior that gave the appearance that he was armed, or used phrases like, 'This is a holdup,' or that it is a 'stickup'"). Indeed, in *State v. Tivis*, 884 S.W.2d 28, 30 (Mo. App. W.D. 1994), this Court expressly rejected the State's argument that evidence that the

6

victim was placed in fear of injury was sufficient to support a conviction for second degree robbery. The court noted that, while the previous version of the robbery statute allowed for a robbery conviction based upon the victim being placed in fear of immediate injury, the current version of § 569.030.1 required the affirmative use or threatened use of immediate physical force. *Tivis*, 884 S.W.2d at 30. Thus, a conviction for second degree robbery under § 569.030.1 requires evidence beyond a reasonable doubt that the defendant communicated, through affirmative conduct and/or words, an intent to immediately use physical force if the victim fails to deliver up the property or otherwise resists his taking of the property. Accordingly, *Gilmore* is inapposite.[3]

As his verbal statements are insufficient to support a finding of a threat of physical force, we are left to consider whether Appellant's actions and nonverbal communication add enough to the situation for a trier of fact to infer beyond a reasonable doubt that he threatened Rothove and/or Holland with the use of immediate physical force. Multiple security cameras recorded Appellant's actions inside and outside the bank. That footage was submitted into evidence at trial. None of it reflects Appellant ever placed a hand in a pocket or otherwise made any type of physical gesture that could be interpreted as intending to indicate that he had a weapon or was poised to attack.[4] He walked into the bank with his arms swaying freely at his side,

---

[3] This same conclusion was reached by the Eastern District of this Court in *State v. Brooks*, No. ED99427, 2014 Mo. App. LEXIS 156 at *12 (Mo. App. E.D. Feb. 18, 2014), which has been accepted on transfer by the Missouri Supreme Court.

[4] While the State attempts to make something of Rothove's testimony that she was scared because she could not see one of his hands at times during the encounter because of the counter between them, Rothove's sightline is not an affirmative action on the part of the defendant that could be viewed as a threat. The simple fact that the chest-high counter obscured the teller's view of one of Appellant's hands is simply not the functional equivalent of Appellant making a physical gesture suggestive of the possession of a weapon.

7

walked up to the counter, placed one arm on the counter, leaned slightly on it, handed Rothove a plastic bag, and then spoke with her. After receiving the money, Appellant turned and walked quickly out of the bank and then ran away. In short, Appellant's body language does not support a finding beyond a reasonable doubt that Appellant threatened anyone with the immediate use of physical force.

The evidence in this case is insufficient to support a finding beyond a reasonable doubt that Appellant communicated to Rothove and/or Holland his intent to immediately employ physical force if they failed to deliver up the money or otherwise resisted his taking of it.

There must be some affirmative conduct on the part of the defendant, *beyond the mere act of stealing*, which communicates that he will *immediately* employ "*physical force*" if the victim "resist[s] . . . the taking of the property." **§ 569.010**. In *Patterson v. State*, 110 S.W.3d 896 (Mo. App. W.D. 2003), this Court listed multiple actions on the part of the defendant from which an implicit threat of force could be inferred. While not an exhaustive list, *Patterson* explained that a threat of force "may be implied from the fact that the defendant displayed a weapon, engaged in behavior that gave the appearance that he was armed, or used [a] phrase[] like, 'This is a holdup." **Id**. at 904 (internal citation omitted).

The case at bar evidences no words or actions on the part of Appellant similar to those noted in *Patterson* as supportive of an inference that the defendant threatened someone with the immediate use of physical force. Clearly, a substantial aspect of why Missouri courts have required some affirmative conduct on the part of the defendant communicating to the victim that defendant will immediately employ physical

8

force is because we have two statutes and two offenses, stealing in violation of §

570.030.1, and robbery in the second degree in violation of § 569.030.1. If, as the State

argues, no affirmative conduct is required, then virtually all stealing other than by means

of deceit will be the same as robbery in the second degree. In other words,

appropriating the property of another with the purpose to deprive the other thereof by

means of coercion, which is criminalized in § 570.030.1, becomes essentially

meaningless if virtually all verbally coercive conduct is treated as robbery in the second

degree in violation of § 569.030.1. "When interpreting statutes, courts do not presume

that the legislature has enacted a meaningless provision." *Edwards v. Gerstein*, 237

S.W.3d 580, 581 (Mo. banc 2007).

For these reasons, we hold that the evidence was insufficient to support a finding

beyond a reasonable doubt that Appellant, either explicitly or implicitly, threatened

Rothove or Holland with the immediate use of physical force.[5] As his conviction for

---

[5] Our decision is consistent with the Eastern District's recent decision in *State v. Brooks*, No. ED99427, 2014 Mo. App. LEXIS 156, at *12-13 (Mo. App. E.D. Feb. 18, 2014), which has been accepted on transfer by the Missouri Supreme Court. In *Brooks*, the defendant entered a bank wearing bulky clothing, a long-haired wig, a baseball cap, and sunglasses. *Id*. at *2. He approached a teller and handed her a note stating: "Fifties, hundreds, no bait money, and bottom drawer." *Id*. at *2-3. When the teller began to walk away to retrieve the money, the defendant slammed his hand on the counter and told her to "get back here." *Id*. at *3. After the teller explained that the money the defendant wanted was elsewhere, she retrieved the money and placed it on the counter in front of the defendant. *Id*. The defendant then placed the money in a bag and left. *Id*. The defendant was convicted of second degree robbery. *Id*. at *4. On appeal, he challenged the sufficiency of the evidence to support a finding that he had used or threatened to immediately use physical force against the teller. *Id*.

In reversing the conviction, *Brooks* held that "there must be some affirmative conduct on the part of the [defendant], *beyond the mere act of stealing*, which communicates that he will '*immediately*' employ '*physical force*' if the victim 'resist[s] . . . the taking of the property.'" *Id*. at *11 (quoting *§ 569.010*). *Brooks* stated that this Court's decision in *Patterson v. State*, 110 S.W.3d 896 (Mo. App. W.D. 2003), "best summarized the circumstances in which we may find an implicit threat of force." *Id*. at *10. *Brooks* continued, "Though not an exhaustive list, *Patterson* explained that a threat of force 'may be implied from the fact that the defendant displayed a weapon, engaged in behavior that gave the appearance that he was armed, or used [a] phrase[] like, 'This is a holdup.'" *Id*. (quoting *Patterson*, 110 S.W.3d at 904). *Brooks* noted that none of the circumstances described in *Patterson* were present in that case and that a search of Missouri case law "reveal[ed] no case in which a defendant was convicted of second degree robbery because of a disguise, a hand slap on a counter, or the fact that the incident occurred during business hours at a bank." *Id*. at *11. *Brooks* held that, based upon the evidence presented, "a trier of

9

second degree robbery is, therefore, not supported by sufficient evidence, it must be vacated.

"[W]here a conviction of a greater offense has been overturned for insufficiency of the evidence, the reviewing court may enter a conviction for a lesser offense if the evidence was sufficient for the [trier of fact] to find each of the elements and the [trier of fact] was required to find those elements to enter the ill-fated conviction on the greater offense." **State v. O'Brien**, 857 S.W.2d 212, 220 (Mo. banc 1993). This case presents such circumstances. "A person commits the crime of robbery in the second degree when he forcibly steals property." **§ 569.030.1**. "[A] person 'forcibly steals,' and thereby commits robbery, when in the course of stealing, as defined in section 570.030, RSMo, he uses or threatens the immediate use of physical force upon another person." **§ 569.010(1)**. Accordingly, the elements of stealing under § 570.030 are required for a conviction for robbery, and the trial court had to have found them to have been proven in entering its conviction of Appellant for robbery. Because the evidence was clearly sufficient for the trial court to have found all of the elements of the lesser offense of stealing under § 570.030 and the trial court was required to have found all of those elements to have entered its conviction for robbery, we enter a conviction for that offense. The cause is remanded to the trial court for re-sentencing consistent with this opinion.

Joseph M. Ellis, Judge

Gabbert, J. concurs
Mitchell, J. dissents in separate opinion filed

---

fact could not reasonably have found that Brooks 'used or threaten[ed] the immediate use of physical force upon another person,' as required by the statute for robbery in the second degree." **Id**. at *10-11.

10



# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | |
|---|---|
| STATE OF MISSOURI, | ) |
| | ) |
| Respondent, | ) |
| | ) WD76520 |
| v. | ) |
| | ) OPINION FILED: |
| | ) September 30, 2014 |
| GARY LELAND COLEMAN, | ) |
| | ) |
| Appellant. | ) |

## DISSENTING OPINION

The majority concludes that the evidence presented was not sufficient for a rational trier of fact to find beyond a reasonable doubt that Coleman committed the crime of second-degree robbery. But because I believe the majority misinterprets the statutory elements and fails to consider relevant facts that, when coupled with our deferential standard of review, demonstrate that there was sufficient evidence that Coleman knowingly engaged in conduct that threatened the immediate use of physical force, I respectfully dissent.

### A. The elements of second-degree robbery

The crime of second-degree robbery is committed when a person "forcibly steals property." § 569.030.1.[1] "Forcibly steals" is defined as the use or threatened immediate use of physical force upon another person, in the course of stealing, "for the purpose of: (a)

---

[1] All statutory citations are to the Missouri Revised Statutes (2000), as updated by the 2011 Cumulative Supplement.

[p]reventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking; or (b) [c]ompelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the theft." § 569.010(1). Put simply, the elements of second-degree robbery are: (1) the use or threatened immediate use of physical force upon a person; (2) for the purpose of obtaining property against that person's will.

There is both a conduct element and a result element. The conduct element is the use or threatened immediate use of physical force. The result element is obtaining property against the will of another. Of the two elements, a mental state is ascribed to only one: the result element. And that mental state is purposely.[2] § 569.010(1) ("for the purpose of"). There is no mental state prescribed in the statute regarding the conduct element.

Section 562.021 addresses the question of what mental state is required. Generally, "if the definition of any offense does not expressly prescribe a culpable mental state for any elements of the offense, a culpable mental state is nonetheless required and is established if a person acts purposely or knowingly." § 562.021.3. Subsection 3 does not apply to second-degree robbery, however, because there *is* a mental state prescribed. Subsection 1 of § 562.021 indicates that "[i]f the definition of any offense prescribes a culpable mental state but does not specify the conduct, attendant circumstances or result to which it applies, the prescribed culpable mental state applies to each such material element." This subsection, however, also does not apply because the mental state prescribed (purposely) applies only to the result element of the crime (obtaining property against the will of another person). Rather, the applicable subsection is subsection 2, which provides that

---

[2] "A person **'acts purposely'**, or with purpose, with respect . . . to a result . . . when it is his conscious object . . . to cause that result." § 562.016.2.

2

> [i]f the definition of an offense prescribes a culpable mental state with regard to a particular element or elements of that offense, *the prescribed culpable mental state shall be required only as to specified element or elements, and a culpable mental state shall not be required as to any other element of the offense*.

§ 562.021.2 (emphasis added).  Thus, there is no mental state required for the conduct element of second-degree robbery.[3]

The majority finds the evidence insufficient because, in part, it believes there is no indication that Coleman, by his acts, purposely conveyed a threat to either the teller or branch manager.[4]  I believe that the majority's conclusion is premised upon a misapplication of the law insofar as it requires the State to prove that the conscious object of Coleman's conduct was to convey a threat.  *See* § 562.016.2 ("A person 'acts purposely[,'] or with purpose, with respect to his conduct . . . when it is his conscious object to engage in that conduct.").

While I might be persuaded to concur with the majority's conclusion of insufficient evidence under the standard articulated, where the majority's and my analyses diverge is that I do not believe the State is required to prove that Coleman purposely conveyed a threat to the teller or branch manager.[5]  As explained above, applying a purposely standard is grafting a

---

[3] As with all offenses, the conduct must still be a "voluntary act"—in other words, "[a] bodily movement performed while conscious as a result of effort or determination." § 562.011.2(1).

[4] The majority characterizes the State's argument as suggesting "that the statements made by Appellant, when viewed in the context of the situation and considering his demeanor, are sufficient to support a finding that Appellant *intended* for Rothove and Holland to feel threatened and to believe that he would use physical force against them if they failed to comply with his demands."  Majority op. at 5 (emphasis added).  In response, the majority concludes that "[a] conviction for second degree robbery under § 569.030.1 requires evidence beyond a reasonable doubt that the defendant communicated, through affirmative conduct and/or words, an intent to immediately use physical force."  *Id.* at 7.  "The evidence in this case is insufficient to support a finding beyond a reasonable doubt that Appellant communicated to Rothove and/or Holland his intent to immediately employ force if they failed to deliver up the money or otherwise resisted his taking of it."  *Id.* at 8.

[5] The majority disputes this interpretation based upon the definition of "threat" as a "communicated intent."  Majority op. at 4 n.1.  A "communicated intent," however, is not the same thing as an intentional communication.  "Communication" is merely "a process by which information is exchanged between individuals."  *Merriam-Webster.com*, http://www.merriam-webster.com/dictionary/communication (Last visited Sep. 5, 2014).  It consists of not only what we say but also what we do.  "Nonverbal communication includes the speaker's body language as well as what the speaker is not saying."  Beryl Blaustone and Carmen Huertas-Noble, *LAWYERING AT THE INTERSECTION OF MEDIATION AND COMMUNITY ECONOMIC DEVELOPMENT:  INTERWEAVING INCLUSIVE LEGAL PROBLEM SOLVING SKILLS IN THE TRAINING OF EFFECTIVE LAWYERS*, 34 Wash. U. J.L. & Pol'y 157, 180 (2010).  In

mental state onto the conduct element that was not placed there by the legislature. Rather, I would hold that the evidence must be sufficient to allow a rational fact finder, applying an objective standard, to conclude that Coleman engaged in conduct that threatened the immediate use of physical force.

## B. Relevant facts to be considered

Although no mental state is required for the conduct element, I would nevertheless find the evidence sufficient to meet the minimum standard of knowingly—the mental state applied when a statute wholly lacks a culpable mental state.[6] According to § 562.016.3, "[a] person 'acts knowingly[,'] or with knowledge, . . . [w]ith respect to his conduct . . . when he is aware of the nature of his conduct."

In conducting its analysis, the majority discounted the facts that the teller could not see Coleman's hand, that the teller and branch manager felt afraid, that Coleman demanded money, and that the robbery took place in a bank. I do not disagree with the notion that these facts might carry less weight, *if the standard requires Coleman to have purposely conveyed a threat*. But, under the proper standard, I believe these facts can be considered.

Here, a rational fact finder could find that Coleman was aware that the nature of his conduct was such that it could be perceived as threatening, even if he did not purposely convey a

---

requiring "affirmative conduct," the majority is simply requiring an intentional communication where the statute does not.

The majority further suggests that "affirmative conduct" (i.e., an intentional communication) is required in order to distinguish second-degree robbery from stealing by coercion. I disagree. "Stealing by coercion includes, but is not necessarily limited to, conduct which would have constituted extortion and blackmail." § 570.030, cmt. to 1973 proposed code. Extortion and blackmail did not necessarily entail any threats of *physical* harm. For example, one could commit either extortion or blackmail by threat to reputation. *See, e.g., State v. Patterson*, 196 S.W. 3, 5-6 (Mo. 1917) (evidence sufficient for charge of extortion where defendant threatened to have victim unjustly prosecuted for statutory equivalent of sodomy). It is the threat of *physical harm* that distinguishes second-degree robbery from stealing by coercion.

[6] This is not to suggest that "knowingly" is required in this context. As clearly stated in § 562.021.2, if a culpable mental state is prescribed for one element and not others, then "the prescribed culpable mental state shall be required only as to specified element or elements, and a culpable mental state *shall not be required* as to any other element of the offense." (Emphasis added.) My use of "knowingly" here is merely for illustration.

4

threat. Coleman, while wearing sunglasses, approached a teller in a bank, demanded money that he had no lawful right to, kept one hand concealed, and directed the branch manager not to move any farther when she approached to investigate the situation. It is not a novel idea to suggest that the teller and branch manager in that situation would perceive Coleman's actions as threatening.[7]

Even assuming that Coleman did not purposely convey a threat, clearly it was his purpose to capitalize on the results of a perceived threat. As mentioned above, the statute requires that the individual act purposely with respect to the result; in other words, the State had to prove that it was Coleman's conscious object that the teller and branch manager would feel compelled to deliver up the bank's property in response to his demand. I think it is beyond dispute that this is the result Coleman intended when he walked into the bank and demanded money. While it is unclear from the record what the actual consequences would have been (if any) had the teller not turned over the money, there is at least a reasonable inference that Coleman's conscious object was for her to feel compelled to deliver up the property. I think it *un*reasonable—and thus

---

[7] Numerous federal cases interpreting the federal bank robbery statute, 18 U.S.C. § 2113, have concluded that the mere demand for money from a teller in a bank meets a higher burden of establishing "conduct reasonably calculated to produce fear." *See U.S. v. Henson*, 945 F.2d 430 (1st Cir. 1991); *U.S. v. Hickson*, 16 F.3d 412 (4th Cir. 1994); *U.S. v. Robinson*, 527 F.2d 1170 (6th Cir. 1975); *U.S. v. Gipson*, 383 F.3d 689 (8th Cir. 2004); *U.S. v. Friedman*, 860 F.2d 1090 (9th Cir. 1988); *U.S. v. Cornillie*, 92 F.3d 1108 (11th Cir. 1996).

Several other states also deem such circumstances to constitute an implicit threat. *See, e.g., State v. Collinsworth*, 966 P.2d 905, 908 (Wash. App. 1997) ("No matter how calmly expressed, an unequivocal demand for the immediate surrender of the bank's money, unsupported by even the pretext of any lawful entitlement to the funds, is fraught with the implicit threat to use force."); *State v. Losey*, 2006 WL 3802925, *3 (Iowa App. 2006) ("[Defendant's] demeanor, proximity to the bank teller, his note demanding money, as well as the teller's resulting fear, when considered in total, support an inference of the requisite statutory intent."); *State v. Hernandez*, 134 N.M. 510, 512-13 (N.M. App. 2003) ("Where a defendant points a note at the teller's cash drawer, keeps his other hand hidden from view, states that the teller should give him everything, and directs the teller not to use the alarm, a reasonable fact finder could conclude that this combination of actions threatened force and caused the teller to hand over the contents of the cash drawer.").

The majority casts off the federal bank robbery cases for the sole reason that Missouri does not have a bank robbery statute. I fail to see the distinction, as the only real difference between the bank robbery statute and our second-degree robbery statute is the additional element the federal government has to prove: namely, the location of the robbery (a bank). The courts' analyses in the above-cited cases, however, is not focused on the location element; rather the analysis in each of the cases is focused on the conduct element and what surrounding circumstances can be considered in evaluating whether the conduct establishes an implicit threat.

contrary to our standard of review—to infer that Coleman walked into the bank solely motivated by the *hope* that the bank would willingly give him money in response to his request.

Yet, even if such an inference were a reasonable one, our standard of review dictates that reversal would not be warranted. Under our standard of review, "[e]ven if the evidence would support two equally valid inferences, only the inference that supports the finding of guilt can be considered." *State v. Latall*, 271 S.W.3d 561, 568 (Mo. banc 2008). Here, although this is a close case, there is at least one reasonable inference supporting the trial court's finding that Coleman implicitly threatened the immediate use of physical force, regardless of whether he did so purposely. Thus, the evidence was sufficient to support his conviction of second-degree robbery. Accordingly, I would affirm Coleman's conviction and sentence.

_____
Karen King Mitchell, Judge

6