This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO**,

Plaintiff-Appellee,

v. **No. 33,965**

**DAVID GRADO,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF LUNA COUNTY**
**Daniel Viramontes, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Elizabeth Ashton, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Sergio Viscoli, Appellate Defender
David Henderson, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**VIGIL, Chief Judge.**

**{1}** Convicted of aggravated burglary, contrary to NMSA 1978, § 30-16-4(C) (1963), Defendant appeals. Defendant argues that: (1) he received ineffective assistance of counsel; and (2) flaws in the jury instructions constitute fundamental error. We disagree and affirm.

**I.    BACKGROUND**

**{2}** Around midnight on July 23, 2013, Defendant broke through a bathroom window screen and entered the Gullien home in Deming, New Mexico. At trial, Defendant did not dispute the occurrence of his unorthodox entry into the Gullien home, or the fact that he was without permission to enter the home. Rather, he explained he had been awake for several days binging on methamphetamine, and consistent with his experience on prior such occasions, Defendant said he had become very fearful and suspicious, and came to believe the group of people he was with wanted to hurt him. To get away, Defendant testified that he ran down the street without his shoes and took refuge within the Gullien home located about six houses from where he fled.

**{3}** When Defendant broke through the bathroom window screen, the teenage daughter of Antonio Gullien (Gullien) was using the bathroom. When she heard the sound of the screen breaking and then heard Defendant breathing, she pulled up her underwear and darted for the door. Before she could leave the bathroom she felt

someone, who she identified as Defendant, grab her arm. She managed to get to the hall and started running. However, she hadn't had time to pull her pants up properly, so she tripped and fell in the hallway. Defendant maintained that he didn't recall seeing her.

{4}    Gullien had just fallen asleep after turning off the television a few minutes before. When he heard screaming, he opened the door to the hall and saw his daughter on the floor. He also saw Defendant, who raised his hands. Gullien testified he picked Defendant up and "body-slammed" him to the floor. Defendant didn't struggle, but informed Gullien that he had just seen "the devil." Gullien asked that his wife call the police and held Defendant on the floor until Officer Feltrow of the Deming Police Dapartment arrived several minutes later.

{5}    Officer Feltrow testified that he saw Gullien astride Defendant on the floor in the hallway. Officer Feltrow handcuffed Defendant and placed Defendant in the back of his patrol car. Defendant smelled of alcohol, seemed very intoxicated, and lay down in the back seat. Officer Feltrow then drove to the emergency room of a nearby hospital.

{6}    Officer Feltrow testified that as they drove, Defendant volunteered that he was dating the teenager, yet could not provide her name when asked to do so by Officer Feltrow. Upon arriving at the hospital, Defendant declined medical treatment, and

Officer Feltrow proceeded to the police station. En route, Defendant spontaneously blurted out that he broke into the Gullien residence because he wanted to steal jewelry.

{7} The defense theory at trial was that Defendant did not commit the crime of aggravated burglary, but rather the lesser included crime of breaking and entering. He admitted that he intentionally broke into the Gullien home, but maintained that he did so to seek shelter and refuge.This theory was supported by testimony that Defendant was intoxicated with alcohol, high on illegal drugs, and became paranoid that the people he was with were "out to get me." Despite his entry into the Gullien home through the bathroom window, Defendant asserted that his intention was to get help. Defendant testified to feeling relieved once Officer Feltrow arrived and arrested him because he knew then that he was no longer in danger.

{8} During closing argument, defense counsel argued that Defendant was intoxicated, but stated that intoxication did not excuse bad behavior and was not being offered as an excuse by Defendant. Rather, Defendant's attorney stated Defendant's intoxication was an explanation of Defendant's mindset when "[Defendant] was running from some danger, real or imagined, but in his mind very real." This was consistent with the defense theory that Defendant did not break into the home to steal, but to seek safety, whether the threat was real or not.

{9} Consistent with the defense theory of the case, defense counsel submitted a

requested jury instruction on the lesser included offense of breaking and entering. The State objected to timeliness of the submission of the instruction, but took no position and deferred to the trial court's discretion. The trial court prepared the final jury instructions, including the lesser included instruction submitted by Defendant, and provided them to counsel. The trial court asked counsel if they were "comfortable with the instructions and the order." Defense counsel had no objection to the instruction.

{10}     The jury found Defendant guilty of aggravated burglary, and the State filed a supplemental information alleging Defendant to be a habitual offender by virtue of two prior felony convictions. Defendant conceded habitual offender status, and accordingly received an enhanced sentence. Defendant appeals.

## II.     DISCUSSION

## A.     Ineffective Assistance of Counsel

{11}     We examine claims of ineffective assistance of counsel de novo. *State v. Cordova*, 2014-NMCA-081, ¶ 7, 331 P.3d 980, *cert. denied*, 2014-NMCERT-007, 337 P.3d 923. We generally presume that trial counsel provided adequate assistance. *State v. Bernal*, 2006-NMSC-050, ¶ 32, 140 N.M. 644, 146 P.3d 289. To succeed on an ineffective assistance of counsel claim, "a defendant must first demonstrate error on the part of counsel, and then show that the error resulted in prejudice." *Id*. The

5

defendant has the burden to establish each element. *State v. Roybal*, 2002-NMSC-027, ¶ 19, 132 N.M. 657, 54 P.3d 61. To satisfy the first prong, a defendant must demonstrate that the "representation falls below an objective standard of reasonableness." *Bernal*, 2006-NMSC-050, ¶ 32 (alteration, internal quotation marks, and citation omitted). In this regard, there is no error if counsel's conduct can be justified as trial strategy or tactical. *Id.* To satisfy the second prong of prejudice, a defendant must demonstrate, based on a reasonable probability that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* (internal quotation marks and citation omitted).

{12}    Defendant argues that he received ineffective assistance of counsel because defense counsel "failed to fully develop the evidence supporting voluntary intoxication; or to request elements instructions that embedded a voluntary intoxication defense and which would have provided a complete defense to both aggravated burglary and breaking-and-entering; or to object to a general criminal intent instruction limited to the crime of aggravated burglary (to which it did not apply) rather than breaking-and-entering (to which it did)." We disagree.

{13}    We acknowledge that "[v]oluntary intoxication provides a defense to specific-intent crimes where the intoxication is to such a degree as would negate the possibility of the necessary intent." *State v. Hernandez*, 2003-NMCA-131, ¶ 20, 134 N.M. 510,

6

79 P.3d 1118 (internal quotation marks and citation omitted). However, the record before us demonstrates a reasonable tactical decision not to employ this defense or seek an instruction on this defense. Defense counsel argued a valid theory that Defendant was running from danger—real or imagined—and entered the house to obtain safety, contending that his intoxication explained the situation and indicated his "mindset." Defendant used the term "mindset" interchangeably with intent. The record further demonstrates that counsel emphasized to the jury at closing arguments that intoxication "is not an excuse for bad behavior and [he is] not offering it as an excuse for bad behavior." Defense counsel stressed Defendant's intoxication to provide support for an alternative mental state in order to negate an intent to steal jewelry.

{14} Nevertheless, Defendant argues on appeal that defense counsel's theory conflated a voluntary intoxication defense with a defense that Defendant had an irrational and confused intent based on his fatigue and drug consumption, and overlooked what is otherwise a complete defense. We are not persuaded. Defense counsel emphasized that Defendant's intoxication affected his "mindset," to highlight that Defendant's intent was to obtain safety during the incident. This strategy highlighted Defendant's intent to find safety rather than to steal jewelry, a reasonable tactical choice under the circumstances.

**{15}** We conclude that defense counsel's decision not to use Defendant's intoxication as an excuse was "a legitimate strategy well within the wide range of reasonable professional assistance." *State v. Garcia*, 2011-NMSC-003, ¶ 37, 149 N.M. 185, 246 P.3d 1057 (internal quotation marks and citation omitted). Moreover, the reliability of the defense that was actually presented could have been undermined by simultaneously offering voluntary intoxication as an alternative defense. *Cf. id.* ("For counsel to press this alibi-based argument and simultaneously request a voluntary intoxication instruction could have undermined [the d]efendant's credibility with the jury."). We hold that defense counsel's strategic decision to avoid conflicting theories was well within the standard of competent counsel. *See id.* ("Counsel made the strategic decision to pursue a valid theory on [the d]efendant's behalf, and understandably demurred from posing a contradictory theory to the jury.").

**{16}** Regarding Defendant's ineffective assistance challenge as it relates to the jury instructions, the district court gave an instruction on the essential elements of aggravated burglary, followed by an instruction on general intent, a step-down instruction, then an instruction on breaking and entering. Defendant complains that trial counsel did not request a specific intent instruction for aggravated burglary, and did not object to placing the general intent instruction after the instruction on the elements of aggravated burglary, or to the absence of a general intent instruction after

8

instruction on the elements of breaking and entering. We do not agree that this amounts to ineffective assistance of counsel.

{17}    In *State v. Stefani*, 2006-NMCA-073, 139 N.M. 719, 137 P.3d 659 we held that it was not error for the general intent instruction to be used with a specific intent offense:

> [The d]efendant's argument that including the instruction on general criminal intent serves to mislead or confuse the jury as to what is required to prove 'intent' is without merit, and has already been addressed and answered by this Court in *State v. Gee*, 2004-NMCA-042, ¶ 7, 135 N.M. 408, 89 P.3d 80.
>
> . . . .
>
> The Use Note Following UJI 14-141 [NMRA], the general intent instruction, states that the 'instruction *must* be used with every crime except for the relatively few crimes not requiring criminal intent or those crimes in which the intent is specified in the statute or instruction.' Furthermore, this Court in *Gee* held that it is not fundamental error to give a general intent instruction where the crime charged is a specific intent crime. Consistent with UJI 14-141, the Use Note following the instruction, as well as this Court's holding in *Gee*, we hold that there was no error in the use of the general intent instruction.

*Stefani*, 2006-NMCA-073, ¶¶ 27, 29 (emphasis added) (citations omitted). In accordance with *Stefani*, counsel was not ineffective in failing to object to the use of, and placement of, the general intent instruction. *See State v. Ruiz*, 1980-NMCA-123, ¶ 46, 94 N.M. 771, 617 P.2d 160, *superceded by statute on other grounds as stated in State v. McCormack,* 1984-NMCA-042, ¶ 12, 101 N.M. 349, 682 P.2d 742 ("When

9

one intends to commit a felony or theft under the burglary statute one also has the general criminal intent of purposely doing an act even though he may not know the act is unlawful.").

{18} Regarding the instruction on breaking and entering itself, the jury did not even consider this offense. The jury was instructed that "[i]f you have a reasonable doubt as to his guilt of [aggravated burglary], you will go on to a consideration of the crime of [b]reaking and [e]ntering." We presume that the jury followed the jury instruction and did not consider the lesser offense of breaking and entering. *See State v. Perry*, 2009-NMCA-052, ¶ 45, 146 N.M. 208, 207 P.3d 1185 ("There is a presumption that the jury follows the instructions they are given." (internal quotation marks and citation omitted)). While defense counsel should have asked that the general intent instruction be worded to include breaking and entering, doing so would not have produced a different outcome. Thus, counsel was not ineffective in failing to do so. Counsel's error therefore did not result in prejudice.

{19} Defendant has not established a prima-facie case of ineffective assistance of counsel on appeal. However, our conclusion here does not prevent Defendant from seeking "habeas corpus proceedings on this issue should he be able to garner evidence to support his claims." *Bernal*, 2006-NMSC-050, ¶ 36.

**B.     Fundamental Error**

{20} Defendant did not object to the jury instructions. Therefore, we review the jury instructions complained of for fundamental error. *State v. Benally*, 2001-NMSC-033, ¶ 12, 131 N.M. 258, 34 P.3d 1134. Under our standard of review for fundamental error, we will not reverse the jury verdict "unless necessary to prevent a miscarriage of justice." *State v. Sandoval*, 2011-NMSC-022, ¶ 13, 150 N.M. 224, 258 P.3d 1016 (internal quotation marks and citation omitted).

{21} Defendant argues that under Rule 5-608 NMRA, the district court was required to give an instruction on voluntary intoxication as a defense, even though it was not requested, because the evidence supported giving the instruction. Under Rule 5-608(A),"[t]he court must instruct the jury upon all questions of law essential for a conviction of any crime submitted to the jury." The Committee commentary and our case law under this rule demonstrate that the district court only has a duty to instruct on the essential law required for a conviction. *See* Rule 5-608(A) comm. cmt. ("Paragraph A of this rule, codifying prior court decisions, requires the district court to instruct the jury on the law essential for a conviction of the crimes submitted to the jury even if no requested instructions are presented by the parties."); *See also State v. Acosta*, 1997-NMCA-035, ¶ 7, 123 N.M. 273, 939 P.2d 1081 ("[U]nder our rules of criminal procedure, [Rule 5-608(A), (D)], and the doctrine of fundamental error, the use of a jury instruction that omits an essential element of the offense can be grounds

11

for reversal even when the omission was caused by the defendant's own actions.").

{22} The presence or absence of voluntary intoxication is not essential to a conviction for aggravated burglary. Accordingly, it was not fundamental error for the district court not to give an instruction on the defense sua sponte in the absence of a request from Defendant, even if the evidence supported giving the instruction. Defendant does not cite us to any applicable authority holding that such an omission constitutes fundamental error. *State v. Vaughn*, 2005-NMCA-076, ¶ 42, 137 N.M. 674, 114 P.3d 354 ("This [c]ourt will not consider an argument that lacks citation to any legal authority in support of that argument. Where a party cites no authority to support an argument, we may assume no such authority exists.").

{23} Defendant reiterates his contentions regarding the general intent instruction, asserting that the district court committed fundamental error in not sua sponte correcting the errors. Again, for the reasons we have already given, there was no error regarding the aggravated burglary charge, and if there was error regarding the breaking and entering charge, it was harmless.

{24} In addition to the foregoing, we observe that Defendant did not contest the breaking and entering charge at trial. Defendant admitted he punched the screen out, went through the bathroom window, and entered the home without permission. In closing arguments, moreover, Defendant requested the jury to find him guilty of breaking and entering. *See State v. Lopez*, 1996-NMSC-036, ¶ 11, 122 N.M. 63, 920

12

P.2d 1017 ("There is, however, an exception to this general rule that failure to include an essential element in an instruction for a crime constitutes fundamental error. This exception applies when the element that was omitted from the instruction was not at issue in the trial."). The record demonstrates that none of the elements of breaking and entering, including general intent, were contested at trial.

**{25}** For the foregoing reasons, we conclude that the district court did not commit fundamental error in instructing the jury.

## III. CONCLUSION

**{26}** The judgment and sentence are affirmed.

**{27}** **IT IS SO ORDERED.**

_____
**MICHAEL E. VIGIL, Chief Judge**

**WE CONCUR:**

_____
**TIMOTHY L. GARCIA, Judge**

_____
**J. MILES HANISEE, Judge**