2006-NMSC-050

146 P.3d 289

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Mario BERNAL, Defendant–Appellant.**

No. 29,183.

Supreme Court of New Mexico.

Oct. 17, 2006.

Kennedy & Han, P.C., Paul J. Kennedy, Albuquerque, NM, Caren Ilene Friedman, Santa Fe, NM, for Appellant.

Patricia A. Madrid, Attorney General, Steven S. Suttle, Assistant Attorney General, Santa Fe, NM, for Appellee.

## OPINION

BOSSON, Chief Justice.

{1} In this direct appeal from Defendant's conviction of felony murder, attempted armed robbery, and several other crimes, Defendant presents certain double jeopardy arguments, challenging his attempted armed robbery conviction as being the predicate for his felony murder conviction. In the course of addressing those arguments, we decide, for the first time, whether the single-larceny doctrine applies to the crime of attempted armed robbery. Addressing that issue and others regarding double jeopardy, as well as Defendant's claim of ineffective assistance of counsel, we affirm Defendant's convictions.

## BACKGROUND

{2} In the early morning of September 3, 2000, two masked gunmen broke into Felipe Giron's house in Belen, intent on robbing him. The gunmen had apparently learned that Giron had nearly $10,000 in cash at his home, purportedly the proceeds of illegal drug sales. They entered Giron's bedroom where he and Giron's live-in girlfriend, Carey Romero, were sleeping. Almost immediately, one of the men shot Giron in the head with a rifle, killing him.

{3} The men then pointed their guns at Romero and demanded she produce the money. Initially, Romero huddled under the covers of the bed for safety. The gunmen forced her out of bed, poked her with their weapons, and demanded that she find the money. At gunpoint, Romero was forced to look through the drawers in the bedroom, but did not find any money. She then turned on the lights in the house and proceeded through the living room to the dining room. During the entire time, one of the gunmen followed her closely with a gun. The gunmen continually yelled at her to hurry and threatened to kill her. She looked through a desk in the dining room, and then started searching a closet. She could not reach the top shelf of the closet, so the gunmen both attempted to reach the shelf. This distracted the gunmen enough to allow Romero to escape through the front door of the house and flee to a neighbor's house, where she

called police. The two men left the house without finding any money.

{4} Romero was not able to identify the gunmen and no immediate arrests were made. Over two years later, Eric Jaramillo, a former gang member, was arrested on an unrelated charge of armed robbery. He told police that he knew who killed Giron. In exchange for leniency on his charge, Jaramillo testified that Defendant had confessed to the attempted robbery and murder of Giron. Based upon Jaramillo's testimony, Defendant was indicted on charges of first-degree murder on the alternative theories of willful and deliberate murder, NMSA 1978, § 30–2–1(A)(1) (1994), or felony murder, Section 30–2–1(A)(2), two counts of attempted armed robbery, NMSA 1978, § 30–16–2 (1973), and various other crimes.[1] At trial, both the prosecution and defense acknowledged that Jaramillo's testimony was the only direct evidence linking Defendant to the crime.

{5} A jury found Defendant guilty of felony murder, both counts of attempted armed robbery, and other charges. Prior to sentencing, the trial court dismissed Defendant's conviction for the attempted armed robbery of Giron because, according to the court, that count represented the predicate felony for the felony murder conviction. The court sentenced Defendant for the attempted armed robbery of Romero. Defendant received a sentence of life imprisonment plus twenty-nine years for the murder, the attempted robbery of Romero, and the other remaining convictions. He now appeals directly to this Court from the trial court's judgment and sentence. *See* Rule 12–102(A)(1) NMRA (direct appeal to Supreme Court of convictions in which sentence of life imprisonment imposed).

**DISCUSSION**

**Double Jeopardy**

{6} Defendant appeals on double jeopardy grounds asking us to reverse his conviction for the attempted armed robbery of Romero. A double jeopardy claim is a question of law that we review de novo.

*State v. Andazola,* 2003–NMCA–146, ¶ 14, 134 N.M. 710, 82 P.3d 77.

{7} The Double Jeopardy Clause of the Fifth Amendment protects citizens against multiple punishments for the same offense. *Swafford v. State,* 112 N.M. 3, 7, 810 P.2d 1223, 1227 (1991). Multiple punishment problems can arise from both "double-description" claims, in which a single act results in multiple charges under different criminal statutes, and "unit-of-prosecution" claims, in which an individual is convicted of multiple violations of the same criminal statute. *Id.* at 8, 810 P.2d at 1228.

{8} Defendant advances two arguments. First, he claims that his remaining conviction for the attempted armed robbery of Romero was a predicate felony for the felony murder conviction and, like the attempted robbery of Giron, was unitary with the felony murder and must be dismissed. Second, Defendant claims he committed only one continuous attempted armed robbery which involved two victims, with only one object-Giron's money. There being only one crime, Defendant argues that since the conviction for attempted armed robbery of Giron was dismissed, the conviction for the attempted armed robbery of Romero must be dismissed as well.

{9} For his first argument, Defendant states a double-description claim because he claims that he was wrongfully convicted under two different statutes for unitary conduct: attempted armed robbery and felony murder. For double-description claims, this Court follows the two-part test identified in *Swafford,* 112 N.M. at 13–14, 810 P.2d at 1233–34. First, we examine whether the conduct was unitary, meaning whether the same criminal conduct is the basis for both charges. *Id.* If the conduct is not unitary, then the inquiry is at an end and there is no double jeopardy violation. *Id.* at 13, 810 P.2d at 1233.

{10} Felony murder has its own particular double jeopardy analysis. If the predicate felony and felony murder are unitary, then the predicate felony must be dis-

1. Originally two other individuals were also indicted for their roles in the crime based upon Jaramillo's testimony, and the three cases were

joined. The State subsequently decided that it could proceed only with the prosecution of Defendant and severed the cases for trial.

missed because it is subsumed within the elements of felony murder. *State v. Contreras*, 120 N.M. 486, 491, 903 P.2d 228, 233 (1995); *see* § 30–2–1(A)(2) ("Murder in the first degree is the killing of one human being ... in the commission of or attempt to commit any felony...."). Since Defendant claims a double jeopardy violation for the predicate felony of attempted armed robbery and felony murder, we examine only whether the conduct underlying these two convictions was unitary.

{11} The facts of this case indicate that, unlike the attempted robbery of Giron, the attempted robbery of Romero was not unitary with Giron's murder. Most significantly, the murder of Giron was complete before the would-be robbers turned their attention to Romero and began to use force and threatened force against her. *See State v. DeGraff*, 2006–NMSC–011, ¶ 27, 139 N.M. 211, 131 P.3d 61 ("In our consideration of whether conduct is unitary, we have looked for an identifiable point at which one of the charged crimes had been completed and the other not yet committed."). The facts of record indicate that the murder of Giron took place almost immediately after the break-in occurred. Once Giron was shot, the felony murder was complete. Only after did the intruders turn to Romero and threaten her in an effort to find the money. Because the attempted robbery of Romero began after the murder of Giron was complete, the acts were not unitary, and Defendant's double-description claim must fail under the traditional *Swafford* analysis for double-description claims.

{12} We turn now to Defendant's second argument: that only one attempted robbery occurred, involving two victims. Since the trial court dismissed one attempt, Defendant argues no conduct remains to sustain a second attempted robbery count. Defendant asserts that only one continuing attempted robbery took place because the assailants moved from Giron to Romero with the single intent of stealing Giron's money. If only one attempted robbery occurred, then there was only one predicate felony, which, as we have seen, must be dismissed as the predicate to the felony murder. However, if two attempt-

ed robberies occurred, one of Giron and one of Romero, then the conviction for the attempted robbery of Romero can stand because that robbery was not unitary with the murder of Giron.

{13} To determine whether two attempted robberies occurred, we must undertake a unit-of-prosecution analysis. For unit-of-prosecution challenges, the only basis for dismissal is proof that a suspect is charged with more counts of the same statutory crime than is statutorily authorized. *Herron v. State*, 111 N.M. 357, 359, 805 P.2d 624, 626 (1991). The inquiry is to determine whether the legislature intended multiple punishments for one continuing act. *Id.*

{14} The unit-of-prosecution analysis is done in two steps. First, we review the statutory language for guidance on the unit of prosecution. *State v. Barr*, 1999–NMCA–081, ¶¶ 13–14, 127 N.M. 504, 984 P.2d 185. If the statutory language spells out the unit of prosecution, then we follow the language, and the unit-of-prosecution inquiry is complete. *Id.* ¶ 14. If the language is not clear, then we move to the second step, in which we determine whether a defendant's acts are separated by sufficient "indicia of distinctness" to justify multiple punishments under the same statute. *Id.* ¶ 15. In examining the indicia of distinctness, courts may inquire as to the interests protected by the criminal statute, since the ultimate goal is to determine whether the legislature intended multiple punishments. *See State v. Alvarez-Lopez*, 2004–NMSC–030, ¶ 42, 136 N.M. 309, 98 P.3d 699. If the acts are not sufficiently distinct, then the rule of lenity mandates an interpretation that the legislature did not intend multiple punishments, and a defendant cannot be punished for multiple crimes. *Barr*, 1999–NMCA–081, ¶ 14, 127 N.M. 504, 984 P.2d 185.

{15} Our first opinion to frame the unit-of-prosecution indicia of distinctness under the modern analysis was *Herron*, 111 N.M. at 361, 805 P.2d at 628. In *Herron*, a defendant was charged with nineteen counts of criminal sexual penetration for the repeated rape of a victim, in various manners and in various rooms of a house, over the course of an hour.

*Id.* at 358, 805 P.2d at 625. This Court found the statutory language unclear regarding the proper unit of prosecution, and we therefore analyzed the events for distinctness using factors culled from various other states that had examined the issue. *Id.* at 361, 805 P.2d at 628. Those factors were (1) temporal proximity of penetrations, (2) location of the victim during each penetration, (3) existence of an intervening event, (4) sequencing of penetrations, (5) defendant's intent as evidenced by his conduct and utterances, and (6) the number of victims. *Id.*

{16} The *Herron* unit-of-prosecution factors were cited in *Swafford,* a double-description case, and adopted as part of the double-description, unitary-conduct inquiry. *See Swafford,* 112 N.M. at 14, 810 P.2d at 1234. This underscores the fact that we are doing a substantially similar analysis when we conduct a unitary conduct inquiry in doubledescription cases as when we conduct a unit-of-prosecution inquiry. In each case, we attempt to determine, based upon the specific facts of each case, whether a defendant's activity is better characterized as one unitary act, or multiple, distinct acts, consistent with legislative intent. This Court in *Swafford* noted that "[t]he case law is replete with failed attempts at judicial definitions of the same factual event." *Id.* at 13, 810 P.2d at 1233. Instead of laying out a mechanical formula for determining whether conduct is unitary, this Court sought instead to provide "general principles" to aid in the analysis. *Id.* We stated that, in general terms, "[t]ime and space considerations" would help to determine distinctness. *Id.* at 13–14, 810 P.2d at 1233–34. If time and space considerations cannot resolve the case, then a court may look at the "quality and nature of the acts," or the "objects and results involved." *Id.* at 14, 810 P.2d at 1234.

{17} Unit-of-prosecution cases after *Swafford* have generally emphasized the six factors from *Herron* or some slight variation thereof. *See, e.g., DeGraff,* 2006–NMSC–011, ¶ 35, 139 N.M. 211, 131 P.3d 61; *State v. Morro,* 1999–NMCA–118, ¶ 10, 127 N.M. 763, 987 P.2d 420; *Barr,* 1999–NMCA–081, ¶ 16, 127 N.M. 504, 984 P.2d 185; *State v. Handa,* 120 N.M. 38, 43, 897 P.2d 225, 230 (Ct.App.

1995); *State v. Mares,* 112 N.M. 193, 199, 812 P.2d 1341, 1347 (Ct.App.1991).

{18} The number of victims has been a particularly significant indicator in determining whether acts are distinct. *See State v. Dominguez,* 2005–NMSC–001, ¶ 23, 137 N.M. 1, 106 P.3d 563 (stating that the number of victims is important for crimes of violence); *Morro,* 1999–NMCA–118, ¶ 26, 127 N.M. 763, 987 P.2d 420 (stating that the general rule in unit-of-prosecution cases is that multiple punishments are appropriate when there are multiple victims); *Barr,* 1999–NMCA–081, ¶ 16, 127 N.M. 504, 984 P.2d 185 (quoting *Herron,* 111 N.M. at 361, 805 P.2d at 628 for the same proposition). While the existence of multiple victims does not, itself, settle whether conduct is unitary or distinct, it is a strong indicator of legislative intent to punish distinct conduct that can only be overcome by other factors. *Barr,* 1999–NMCA–081, ¶ 22, 127 N.M. 504, 984 P.2d 185.

{19} We turn now to the specific statutes for attempted robbery. Section 30–16–2 (robbery); NMSA 1978, § 30–28–1 (1963) (attempt). If the statutory language for attempted robbery were clear regarding the unit of prosecution, then the language would control, and the unit-of-prosecution analysis would be complete. In New Mexico, "Robbery consists of the theft of anything of value from the person of another or from the immediate control of another, by use or threatened use of force or violence." Section 30–16–2. Therefore, the two basic elements of robbery are theft and the use or threatened use of force. *Id.;* UJI 14–1620 NMRA. The statute provides no guidance on the number of prosecution units regarding either the number of thefts or use of force. Attempted robbery is "an overt act in furtherance of and with intent to commit [robbery] and tending but failing to effect its commission." Section 30–28–1. This statute likewise does not provide guidance as to the proper unit of prosecution for multiple attempts. Thus, we look to the indicia of distinctness factors to determine whether Defendant committed one or two attempted robberies.

{20} In this case, the indicia of distinctness are more than sufficient to justify

convicting Defendant of two attempted robberies. Importantly, there were two victims, and most notably, each victim suffered separate and distinct harms at the hands of Defendant. As we mentioned in examining Defendant's double-description argument, the first attempted robbery was clearly completed at the time Defendant burst into Giron's bedroom and Giron was shot, suggesting distinct conduct. *See DeGraff*, 2006–NMSC–011, ¶ 27, 139 N.M. 211, 131 P.3d 61. At the point of the shooting, the jury could reasonably have concluded that Defendant had the intent to steal Giron's money, and he and his confederate used force to try and take that money from Giron by shooting him. After this point, there was a clearly identifiable second crime—the attempted robbery of Romero, which occurred after the felony murder was completed.

{21} As further evidence of distinct conduct, the assailants used a different type of force against Romero than against Giron—poking her with guns and threatening her with violence, as opposed to firing a weapon. *Cf. Herron*, 111 N.M. at 362–63, 805 P.2d at 629–30 (holding that different manner of sexual penetrations indicated distinct sexual assaults). Force was also used against Romero in different parts of the house. *See id.* at 362, 805 P.2d at 629 (stating that acts against the victim at different locations can indicate separate acts); *cf. id.* at 362–63, 805 P.2d at 629–30 (holding that sexual assaults that took place after moving into a different room were distinct).

{22} Perhaps aware of these points of distinct conduct, Defendant argues that he only had one criminal intent—to rob Giron's money—and therefore, there could be only one attempted robbery. Defendant draws an analogy to the single-larceny doctrine. *See State v. Brown*, 113 N.M. 631, 634, 830 P.2d 183, 186 (Ct.App.1992) (explaining that a defendant can only be convicted of one count of larceny, even if property is taken from multiple owners, when the property is taken at one time, at one place, in a continuous sequence of events). He argues that when a defendant has only the intent to steal from one owner during a robbery, as with the single-larceny doctrine, there can be only one

robbery conviction, regardless of the number of victims. In short, Defendant argues the unit of prosecution for robbery should be controlled by the accused's intent.

{23} This raises an issue of first impression in New Mexico. We have not previously addressed the proper unit of prosecution for robbery (or attempted robbery) when more than one victim is involved, but the defendant only intended to steal money from a single person. Accordingly, we look to other jurisdictions for guidance. We note a split on the question of whether multiple robbery convictions are allowed when force is used against multiple victims, but the assailant has the single intent to steal property held in common or belonging to only one of the victims. *Facon v. State*, 144 Md.App. 1, 796 A.2d 101, 122–25 (Ct.Spec.App.2002), *rev'd on other grounds*, 375 Md. 435, 825 A.2d 1096 (2003) (discussing cases from other jurisdictions and noting a split in approaches). We do not attempt to conduct an exhaustive survey of every state's position. Instead, we review several representative cases from each side of the split for the persuasiveness of their reasoning.

{24} Some jurisdictions, like Maryland, California, and Virginia, have allowed multiple charges of robbery when multiple victims are present. In a case that bears some similarity to this case, the Maryland Court of Appeals upheld multiple robbery convictions when a thief killed a husband and wife in separate acts and then took money from a wallet they kept in their house. *Borchardt v. State*, 367 Md. 91, 786 A.2d 631, 664–65 (2001). The Maryland court found that the robbery had components of both larceny and assault, but that it could be treated like assault for unit-of-prosecution purposes, allowing for multiple punishments when multiple victims are harmed. *Id.*

{25} The California Supreme Court took a similar view when it upheld multiple robbery convictions where assailants, in the course of robbing a fast food restaurant, shot one employee and bludgeoned another. *People v. Ramos*, 30 Cal.3d 553, 180 Cal.Rptr. 266, 639 P.2d 908, 929 (1982), *rev'd in part on other grounds*, 463 U.S. 992, 103 S.Ct. 3446, 77 L.Ed.2d 1171 (1983). The California court

ruled that robbery is a crime of violence and fits into the general rule that multiple victims of violence can give rise to multiple convictions. Similarly, the Virginia Court of Appeals affirmed multiple robbery convictions when a defendant ordered multiple employees of a fast food restaurant to give him money from various cash registers located throughout the restaurant, reasoning that the gravamen of robbery is the use of violence against a person, and thus multiple victims can give rise to multiple convictions. *Jordan v. Commonwealth,* 2 Va.App. 590, 347 S.E.2d 152, 156 (1986).

{26} Expressing a contrary view, some jurisdictions have limited the unit of prosecution for robbery when the defendants exhibit a single intent. The Indiana Supreme Court disallowed multiple robbery convictions when criminal assailants took money from multiple tellers in a credit union, reasoning that the essence of robbery is the taking of property, and therefore property stolen from one owner should constitute one robbery. *Allen v. State,* 428 N.E.2d 1237, 1240 (Ind.1981). The West Virginia Supreme Court of Appeals allowed only a single attempted robbery conviction when a man entered a convenience store, ordered one employee to lie on the ground, and shot another employee. The court reasoned that robbery is an aggravated form of larceny and thus subject to the single-larceny doctrine. *State v. Collins,* 174 W.Va. 767, 329 S.E.2d 839, 842 (1984). Courts in some jurisdictions have also been hesitant to allow multiple robbery charges due to a fear that a multiplicity of charges might lead to disproportionate sentences. *See Facon,* 796 A.2d at 122 (surveying the jurisdictional split on the issue and listing reasons why certain jurisdictions reject multiple robberies).

{27} Analyzing this issue in light of New Mexico's legislative policy, we find the reasoning from the Maryland, California, and Virginia courts persuasive, that robbery is a crime designed to punish the use of violence. To the contrary, we are not persuaded by the arguments put forth by the Indiana and West Virginia courts, that robbery is a property crime and nothing more than aggravated larceny.

{28} Our Court of Appeals has previously noted that robbery is distinct from larceny because it requires, and is designed to punish, the element of force. *Brown,* 113 N.M. at 634, 830 P.2d at 186; *see also* UJI 14–1620 Committee commentary ("The gist of the offense of robbery is the use of force or intimidation."); *State v. Hernandez,* 2003–NMCA–131, ¶ 9, 134 N.M. 510, 79 P.3d 1118 ("A robbery conviction requires that the force or threatened use of force must be the lever that serves to separate the property from the victim." (Internal quotation marks and citation omitted.)). Since robbery generally carries a heavier punishment than larceny, the robbery statute clearly is designed to protect citizens from violence. *Compare* NMSA 1978, § 30–16–1 (2006) *with* § 30–16–2. Robbery is not merely a property crime, but a crime against a person. *State v. Wingate,* 87 N.M. 397, 398, 534 P.2d 776, 777 (Ct.App.1975); *cf. United States v. Lujan,* 9 F.3d 890, 891–92 (10th Cir.1993) (stating robbery under New Mexico law is a violent felony for purposes of federal career offender statute because it requires the use or threatened use of force). Like California, we have recognized that multiple victims can often give rise to multiple convictions with crimes of violence. *See Dominguez,* 2005–NMSC–001, ¶ 23, 137 N.M. 1, 106 P.3d 563. Since the robbery statute is designed to protect citizens from violence, we believe it logical that the legislature intended to allow for separate charges for each individual against whom violence or the threat of violence is separately used.

{29} To the extent that some jurisdictions limit the multiplicity of robbery charges due to fear of disproportionate sentences, we generally defer to the judgment of the legislature regarding the appropriate length of sentences. *See State v. Archibeque,* 95 N.M. 411, 412, 622 P.2d 1031, 1032 (1981). We see no reason, in this instance, to use the potential length of a sentence to guide us in determining the appropriate unit of prosecution for robbery.

{30} We note that in other contexts we have rejected arguments that a single intent with multiple acts can only constitute one crime. *See, e.g., DeGraff,* 2006–NMSC–011,

¶¶ 32, 37, 39, 139 N.M. 211, 131 P.3d 61 (holding three tampering with evidence convictions were permissible because of discrete acts, even though Defendant may have had a single intent). While a single intent weighs against distinctness, it is only one factor which can be overcome by other factors suggesting distinct conduct, most notably multiple victims. We also note that when we previously applied the single-larceny doctrine to the crime of embezzlement, the legislature responded promptly to our decision by allowing multiple embezzlement convictions for multiple instances of theft. *See* NMSA 1978, § 30–16–8(A) (1995); *State v. Rowell*, 121 N.M. 111, 118, 908 P.2d 1379, 1386 (1995) (discussing legislative aftermath following *State v. Brooks*, 117 N.M. 751, 877 P.2d 557 (1994)). We decline to extend the single-larceny doctrine to robbery or to establish a categorical rule limiting the unit of prosecution for robbery based upon a single intent.

{31} Accordingly, we reject Defendant's analogy to the single-larceny doctrine and his reliance upon a continuous single intent. We hold that under these facts, where Defendant had the intent to steal only one victim's property, but used separate and discrete acts of force and threats of force against two victims in an attempt to obtain that property, multiple attempted robbery charges do not violate double jeopardy. When a would-be robber uses force in a separate and distinct manner against multiple victims, multiple convictions for robbery (or attempted robbery) will not be prohibited solely because the robber intends to steal from one owner.[2] Because there were two robbery attempts, and because the second robbery attempt was distinct from the first attempt which constituted the predicate felony for felony murder, we hold that no double jeopardy violation occurred when Defendant was convicted of and sentenced for both attempted armed robbery of Romero and felony murder of Giron.

---

2. We express no opinion as to whether two attempted robberies could occur when the *same* act of force is used against two victims, e.g., pointing a gun at both at the same time when only one item of property is sought. That ques-

### Ineffective Assistance of Counsel

{32} For a successful ineffective assistance of counsel claim, a defendant must first demonstrate error on the part of counsel, and then show that the error resulted in prejudice. *Strickland v. Washington*, 466 U.S. 668, 690, 692, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (reaffirmed by *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)). Trial counsel is generally presumed to have provided adequate assistance. *Id.* at 690, 104 S.Ct. 2052. An error only occurs if " 'representation [falls] below an objective standard of reasonableness.' " *State v. Roybal*, 2002–NMSC–027, ¶ 21, 132 N.M. 657, 54 P.3d 61 (quoting *Lytle v. Jordan*, 2001–NMSC–016, ¶ 26, 130 N.M. 198, 22 P.3d 666). If any claimed error can be justified as a trial tactic or strategy, then the error will not be unreasonable. *Id.* With regard to the prejudice prong, generalized prejudice is insufficient. *Id.* ¶ 25. Instead, a defendant must demonstrate that counsel's errors were so serious, such a failure of the adversarial process, that such errors "undermine[ ] judicial confidence in the accuracy and reliability of the outcome." *Id.* A defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052.

{33} Oftentimes, the record on appeal does not provide enough information to adequately determine whether an action was error or caused prejudice. When such questions arise, further evidence is often required. *Duncan v. Kerby*, 115 N.M. 344, 346–47, 851 P.2d 466, 468–69 (1993). Rather than remand the case to the trial court for further hearings, this Court has a general preference that such claims be brought and resolved through habeas corpus proceedings. *Id.* at 346, 851 P.2d at 468; *see* Rule 5–802 NMRA. Therefore, on direct appeal, only when a defendant presents a prima-facie case of ineffective assistance of counsel will this Court remand to the trial court for evidentiary proceedings. *Roybal*, 2002–NMSC–027,

tion is not before us because Defendant used separate acts of force, at separate times, against Giron and Romero. We reiterate that double jeopardy claims are analyzed on a case-by-case basis to determine if conduct is unitary.

¶ 19, 132 N.M. 657, 54 P.3d 61 (citing *State v. Swavola*, 114 N.M. 472, 475, 840 P.2d 1238, 1241 (Ct.App.1992)).

{34} Defendant claims ineffective assistance on the following grounds: (1) trial counsel filed no substantive pre-trial motions, including no motion to dismiss charges on double jeopardy grounds; (2) trial counsel failed to object to hearsay statements during trial; (3) trial counsel stipulated to the admission of testimony from Defendant's mother to the effect that two guns were stolen from her house the day before the burglary; (4) trial counsel failed to investigate, which led to ineffectual cross-examination and opening statement; (5) trial counsel did not tender jury instructions; (6) trial counsel made an inadequate motion for directed verdict; (7) trial counsel failed to adequately confront witnesses on cross-examination; and (8) trial counsel failed to sever the felon in possession of a firearm charge.

{35} Initially, we note that the stipulation to the testimony of Defendant's mother and the failure to sever the felon in possession of a firearm charge represent potentially serious failures on the part of trial counsel, which may demand a full-bodied inquiry at an evidentiary hearing on habeas corpus. These charges, like most of the rest of the claimed errors, may implicate tactical decisions made by counsel at or during trial, and are best evaluated during habeas corpus proceedings where trial counsel can provide testimony. Such evidence is also necessary in this case to demonstrate that any alleged errors caused prejudice.

{36} We conclude Defendant has not presented a prima-facie case of ineffective assistance of counsel on these grounds, and accordingly, we reject Defendant's ineffective assistance of counsel claim. However, this decision does not preclude Defendant from pursuing habeas corpus proceedings on this issue should he be able to garner evidence to support his claims.

## CONCLUSION

{37} Having concluded that Defendant's convictions for attempted armed robbery and felony murder do not violate the double jeopardy prohibition against multiple punishments, and that Defendant has failed to present a prima-facie claim of ineffective assistance of counsel, we affirm his convictions.

{38} **IT IS SO ORDERED.**

WE CONCUR: PAMELA B. MINZNER, PATRICIO M. SERNA, PETRA JIMENEZ MAES, and EDWARD L. CHÁVEZ, Justices.