This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                                              **No. 33,782**

**ANDREW COPPLER,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Judith Nakamura, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Steven H. Johnston, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Bauer, Acting Chief Public Defender
Will O'Connell, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**KENNEDY, Judge.**

{1} Defendant engaged in an altercation with his father, during which his father lost consciousness while in a choke hold. Father died some days later, never having regained consciousness. An autopsy determined that Defendant's father suffered from a heart arrhythmia and died from insufficient oxygen reaching his brain. During trial, the State presented evidence that the arrhythmia caused the father's death and that Defendant's actions likely triggered the father's abnormal heart rhythm. Defendant requested a causation instruction, so that the jury would have to determine whether he was a "significant cause" of his father's death. Defendant was convicted of second degree murder, misdemeanor battery, and aggravated battery.

{2} Defendant asserts that the district court erred in denying his proffered instructions. We disagree. First, the district court did not deny the instruction; Defendant abandoned it. The record shows that after discussion with the court about the instruction, Defendant, upon further overnight research on the issue, decided not to pursue the instruction. This is likely because there was insufficient evidence or justification proffered by Defendant to support giving the instruction. Defendant's withdrawal of the instruction constitutes a waiver of the issue, and the district court did not err in not giving the instruction.

{3} Defendant also argues that his convictions for misdemeanor battery and aggravated battery violated double jeopardy because they arose from the same conduct that gave rise to his conviction for second degree murder. We agree with respect to the conviction for misdemeanor battery alone. The conduct giving rise to the aggravated battery conviction and the conduct giving rise to the second degree

murder conviction was not unitary and therefore did not violate double jeopardy. As such, we therefore reverse only Defendant's misdemeanor battery conviction and remand for resentencing.

**I.    BACKGROUND**

{4}    On November 19, 2012, Defendant, his friend Desi Marin, and his father, Keith Coppler, were in Defendant's back yard[1] grilling and drinking alcohol. Defendant was sitting across from Keith and eating his meal with a steak knife. An argument broke out between Defendant and Keith, though it is unclear what the argument was about. According to Defendant, while he and Keith were arguing, Keith had a machete sitting next to him on the table. Defendant slashed at Keith with the steak knife that was already in his hand, thinking that Keith was going to attack him with the machete. Marin testified that Defendant was the aggressor and made the first attack using the steak knife that was already in his hand. After Defendant slashed at Keith with the steak knife, both men stood up from the picnic table and Keith attacked Defendant with the machete, hitting him in the torso and head. Endeavoring to remove the machete from Keith's grasp, Defendant wrestled Keith to the ground. Once the two men fell to the ground, Defendant briefly put Keith into a headlock,[2] releasing him

---

[1]The home belonged to Defendant's mother. Both Defendant and Keith were staying there temporarily.

[2]The description of Defendant's actions here varies between choke hold and headlock.

as soon as he stopped fighting back.[3] Defendant, seeing that Keith was unconscious and beginning to turn blue, called 911 and began administering CPR. Emergency personnel arrived, and Keith was taken to the hospital, where he died five days later, never regaining consciousness.

{5} A grand jury indicted Defendant on charges of second degree murder, aggravated battery against a household member, and battery against a household member. Defendant's case was tried in front of a jury.

{6} The State called Dr. Sam Andrews, a forensic pathologist with the Office of the Medical Investigator. Dr. Andrews testified that the cause of Keith's death was "anoxic encephalopathy," which is an injury to the brain due to a lack of oxygen. This condition could be caused by a natural event such as a heart attack or abnormal heart rhythm, an infection causing low blood pressure, or compressed vessels in the neck. Dr. Andrews expressed his opinion that, in Keith's case, a compression of the neck led to an abnormal heart rhythm and ineffective blood flow for the brain. Dr. Andrews also acknowledged that other contributing, secondary causes of death were Keith's very enlarged heart. As an obese male with high blood pressure and an electrically unstable heart, Keith could develop an abnormal heart rhythm at any time. Dr. Andrews also acknowledged that Keith's actions prior to Defendant's choke

---

[3]Although the State characterizes Marin's testimony to indicate the choke hold lasted five minutes, subsequent testimony reveals that Marin most likely meant that the entire encounter lasted, at most, five minutes.

hold—sudden movements and exertion—could potentially have caused an arrhythmia.

{7}    Prior to the completion of evidence, defense counsel proffered an instruction based on UJI 14-252 NMRA. UJI 14-252 is a proximate cause instruction to be given if the negligence of the decedent or a third person is "the only significant cause of death[.]" *Id*. The district court reserved its ruling on the instruction until all the evidence was presented. After Dr. Andrews' testimony, the district court heard more argument regarding the propriety of submitting UJI 14-252 to the jury. Defense counsel was clear that the purpose of requesting UJI 14-252 rested on Dr. Andrews' testimony that Keith's own physical condition could have caused his death. At that time, the district court indicated its inclination that UJI 14-252 would not be given without also giving UJI 14-251 NMRA, a homicide instruction concerning proximate cause. Defense counsel stated that he previously "didn't see that [UJI 14-]251 had to go with [UJI 14-]252," believing that "[UJI 14-]251 was a third person . . . like . . . a car or something like that." The district court suggested that defense counsel take another look at the instructions, and adjourned for the day. When the proceedings resumed the next day, defense counsel indicated he would not pursue his proffer of UJI 14-252, based on his "reviewing the notes and the rule." The parties immediately moved on to other instructions, UJI 14-252 was not mentioned again, and the jury was not instructed on either UJI 14-251 or -252, though it was instructed on self-

5

defense. It found Defendant guilty on all charges. Defendant appealed his convictions.

## II.    DISCUSSION

{8}    Defendant makes two arguments on appeal. He first argues that the district court erred when it refused to give his proffered jury instruction on causation. Next, he asserts that his convictions for misdemeanor battery, aggravated battery, and second degree murder violated double jeopardy. The district court's failure to instruct the jury on causation does not constitute reversible error, and only the misdemeanor battery conviction violates double jeopardy.

## A.    The Jury Instruction in Question Was Withdrawn and Unsupported by Evidence

{9}    Defendant argues that the district court erred in denying his requested instruction on causation because Dr. Andrews testified that Keith's heart arrhythmia could have been caused either by Defendant's choke hold or could have arisen spontaneously as a result of the stress of the machete attack on Defendant.[4]

## 1.    Preservation

{10}    We do not agree with Defendant that the district court "erred when it refused

[4]For reasons stated in this Opinion, we caution defense counsel that nowhere in the record does it appear that the district court ruled on the propriety of the instruction, where the record supports the view that the instruction was withdrawn. *See* Rule 12-213(A)(3) NMRA (stating that the statement of facts must "contain citations to the record proper . . . supporting each factual representation"). Counsel's duty to present a fair view of the evidence is something we take seriously.

6

to instruction [sic] the jury on the issue of causation." Conversations between the court and counsel after Dr. Andrews finished testifying indicate that the court had questions about the instruction tendered by Defendant, particularly with regard to the instruction's requiring "evidence of negligence by another person." The court stated, "you were suggesting earlier that the other person is [Keith] himself[,]" and pointed out that UJI 14-252 is only available where "[Keith's] negligence was the sole cause of the accident." Defense counsel conceded that he had not read the committee notes to the instruction. The next morning, as discussion of jury instructions resumed, defense counsel said that, having read the instruction, the notes, and the rule, he was not going to continue to request UJI 14-252 or object to the court giving the instruction to the jury. We consider these events to indicate a mistakenly submitted instruction, the request for which was abandoned by counsel upon further consideration and conversation between the court and defense counsel. Nowhere does there appear in the record a refusal or denial of the instruction. A defendant must make a "clear and unequivocal" request for a jury instruction; tendering an instruction and then notifying the court that, upon reconsideration, its tender would not be pursued waives any claim of error based on the court's failure to give the instruction. *State v. Aragon*, 1982-NMCA-173, ¶ 17, 99 N.M. 190, 656 P.2d 240 (finding a waiver of error when the defendant did not pursue tender of an instruction).

7

**B.    Double Jeopardy**

{11}    The United States Constitution, which applies to New Mexico by virtue of the Fourteenth Amendment, prohibits double jeopardy and protects criminal defendants from receiving multiple punishments for the same offense. U.S. Const. amends. V & XIV, § 1; *State v. Swick*, 2012-NMSC-018, ¶ 10, 279 P.3d 747. We review de novo the constitutional question of whether the Double Jeopardy Clause has been violated. *Swick*, 2012-NMSC-018, ¶ 10. There are two types of double jeopardy cases: double description cases and unit of prosecution cases. A double description case exists where the same conduct results in multiple convictions under different statutes. *Swafford v. State*, 1991-NMSC-043, ¶ 9, 112 N.M. 3, 810 P.2d 1223. A unit of prosecution case is one in which a defendant challenges multiple convictions for violations of a single statute. *Id.* ¶ 8. Defendant's case is a double description case.

{12}    Double description cases are subject to a two-part test that our Supreme Court set forth in *Swafford. See id.* ¶ 25. First, we analyze "whether the conduct underlying the offenses is unitary, *i.e.*, whether the same conduct violates both statutes." *Id.* The proper inquiry in analyzing whether conduct is unitary is "whether the facts presented at trial establish that the jury reasonably could have inferred independent factual bases for the charged offenses." *State v. Franco*, 2005-NMSC-013, ¶ 7, 137 N.M. 447, 112 P.3d 1104 (internal quotation marks and citation omitted). This inquiry requires a

8

consideration of whether a defendant's conduct is separated by "sufficient indicia of distinctness"; if such indicia exists, conduct is not unitary. *Swafford*, 1991-NMSC-043, ¶ 26. Indicia of distinctness include the temporal proximity of the acts, the location of the victim during the act, the existence of an intervening event, the sequencing of the acts, the defendant's intent, and the number of victims. *Id.* ¶ 28 (applying factors to a double description case, particularly acknowledging time, space, results, and quality and nature of the acts involved); *State v. Bernal*, 2006-NMSC-050, ¶ 16, 140 N.M. 644, 146 P.3d 289 (applying factors to a unit of prosecution case, reasoning that the analysis in both cases is "substantially similar"). If conduct is unitary, double jeopardy analysis continues; if the conduct is separate and distinct, our double jeopardy analysis is at an end and we need not continue to the second step in the analysis. *Swafford*, 1991-NMSC-043, ¶ 28.

**1.    Aggravated Battery Conviction**

{13}    Defendant asserts that his conduct was unitary and that his aggravated battery conviction was subsumed within his murder conviction. The State suggests that the conduct giving rise to the aggravated battery conviction and the conduct giving rise to the second degree murder conviction were not unitary. In support, the State argues that the aggravated battery was completed when Defendant put down the steak knife.

{14}    The evidence supports the State's theory that a jury could reasonably have

9

distinguished a distinct factual bases for the aggravated battery charge and the second degree murder charge. The actions that occurred during the fight involved two distinguishable acts—slashing Keith with a steak knife and putting Keith in a headlock. Although the fight morphed from a slashing while sitting at a table, to a standing altercation, during which both men dropped their weapons, to wrestling on the ground, the evidence clearly established a sequence of events. Based on that sequence of events, the fact finder could attribute Keith's injuries to Defendant's distinct actions during the fight. It is reasonable for a jury to distinguish the act of slashing with a steak knife, which gave rise to the aggravated battery charge, with the act of putting someone in a headlock, after Keith's intervening attack with the machete, which gave rise to the second degree murder charge. Because the evidence presented reveals that the acts were factually different in both intention and method, this distinction exists despite the physical and temporal proximity of the two acts. While the fight occurred in a confined location, namely the back yard, there was some spatial separation between both acts—from sitting, to standing, to the ground. Furthermore, the established sequence of events helps to establish that the dropping of the machete and knife constitutes a minor intervening event that de-escalated the situation. Because the jury could, from the evidence presented at trial, infer an independent factual bases for each offense, we conclude that the conduct giving rise

to each claim was not unitary. *See Franco*, 2005-NMSC-013, ¶ 7. We therefore need not continue with our double jeopardy analysis as to the aggravated battery conviction.

**2.      Battery Conviction**

{15}      Defendant's argument regarding his battery conviction is the same as stated above; he argues his conduct was unitary and that battery is subsumed by the murder conviction. The State agrees that Defendant's conduct with respect to battery and second degree murder was unitary but provides no further analysis regarding legislative intent. Instead, it requests that we vacate Defendant's misdemeanor battery conviction. While we are not bound to accept the State's concession, we agree that the misdemeanor battery conviction should be vacated. *See State v. Foster*, 1999-NMSC-007, ¶ 25, 126 N.M. 646, 974 P.2d 140 (stating appellate courts are not bound by the state's concessions), *abrogated on other grounds by Kersey v. Hatch*, 2010-NMSC-020, ¶ 17, 148 N.M. 381, 237 P.3d 683. The elements of battery are subsumed by those of aggravated battery. *Compare* UJI 14-320 NMRA, *with* UJI 14-322. Additionally, both are in place in order to "punish overt acts against a person's safety but take different degrees into consideration." *Swick*, 2012-NMSC-018, ¶ 29.

{16}      Defendant's conviction for misdemeanor battery should be vacated as violative of double jeopardy. *See State v. Santillanes*, 2001-NMSC-018, ¶ 28, 130 N.M. 464,

27 P.3d 456 (citing *State v. Pierce*, 1990-NMSC-049, ¶ 46, 110 N.M. 76, 792 P.2d 408 (acknowledging the rule that requires lesser offense be vacated in the event that two convictions impose impermissible multiple punishments)); *see also State v. Duran*, 1969-NMCA-048, ¶ 11, 80 N.M. 406, 456 P.2d 880 (acknowledging that battery is included within, and therefore suspended by, the offense of aggravated battery).

## III.   CONCLUSION

{17}     Defendant's proffer of UJI 14-252 adequately alerted the district court to his causation theory of defense, and as such, preserved the issue for appellate review, but Defendant's withdrawal from the proffer constitutes a waiver of the instruction, and no evidence shows that the district court either refused or denied the instruction, which was also unsupported by the evidence. There was no error attending the fact that UJI 14-252 was not given. The conduct giving rise to Defendant's aggravated battery conviction is distinguishable from the conduct that gave rise to the second degree murder conviction. Accordingly, we affirm Defendant's convictions for second degree murder and aggravated battery. We remand for vacation of Defendant's conviction for misdemeanor battery as violative of double jeopardy.

{18}     **IT IS SO ORDERED.**

_____
**RODERICK T. KENNEDY, Judge**

12

**WE CONCUR:**

_____

**JONATHAN B. SUTIN, Judge**

_____

**LINDA M. VANZI, Judge**