This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                    **No. A-1-CA-35235**

**MICHAEL SPITZER,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF OTERO COUNTY**
**Jerry H. Ritter, Jr., District Judge**

Hector H. Balderas, Attorney General
Laura E. Horton, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Tania Shahani, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**BOHNHOFF, Judge.**

{1}     Following a jury trial, Defendant Michael Spitzer was convicted of three counts

of forgery based on his use of his brother's identification when he sold jewelry at a pawn shop. On appeal, Defendant raises two issues: (1) whether the district court abused its discretion under Rule 11-403 NMRA and Rule 11-404(B) NMRA in admitting evidence that the jewelry was stolen, and (2) whether Defendant received ineffective assistance of counsel where defense counsel elicited direct examination testimony from Defendant regarding his prior felony convictions. We conclude that the district court did not abuse its discretion in admitting evidence that the pawned jewelry was stolen. On the present record Defendant has not established a prima facie case that he was prejudiced by any error on the part of his trial counsel in eliciting the testimony about Defendant's prior felony convictions and, therefore, we affirm on that issue as well. Defendant may, however, pursue his claim by means of a petition for habeas corpus relief.

**BACKGROUND**

{2}     On September 20, 25, and 27, 2013, Defendant pawned jewelry at the Gold 'N Cash Roundup in Alamogordo. On each of those occasions, Defendant used his brother's identification when he pawned the jewelry and signed his brother's name on the receipts. Around that time, Misty Curry-Hernandez reported that her deceased mother's home had been burglarized and her mother's jewelry had been stolen. Upon finding some of the stolen jewelry at the Gold 'N Cash Roundup, law enforcement

reviewed the pawn shop's receipts and traced the items back to Defendant's brother and ultimately to Defendant. Defendant told law enforcement that the jewelry he pawned came from his deceased father's belongings in Texas, and that he had his brother's permission to sign his name and use his identification. However, Ms. Curry-Hernandez positively identified some of her mother's jewelry from the items that Defendant pawned, including a buffalo belt buckle with turquoise, a snuff can, and a necklace. Ms. Curry-Hernandez was also shown photographs of other pieces of jewelry pawned by Defendant that she could not positively identify as having been her mother's.

**{3}** The State did not contend that Defendant had burglarized Ms. Curry-Hernandez's mother's home. On the contrary, Otero County Sheriff's Deputy Emilio Alonzo testified that Defendant was not the person who had burglarized Ms. Curry-Hernandez's mother's home because still photographs from a game camera inside the home showed a different individual burglarizing the home.

**{4}** Defendant was charged by grand jury indictment on October 8, 2014, with three counts of forgery (make or alter). As set forth in the jury instructions, which Defendant does not challenge on appeal, the State had to establish the following elements of the crime:

    1.    [D]efendant made a false signature;

2.     At the time, [D]efendant intended to injure, deceive or cheat Kenneth Spitzer [Defendant's brother], Gold'n Cash Roundup, or another;

3.     This happened in New Mexico on or about the [dates in question].

The trial lasted one day. The jury deliberated approximately fifteen minutes before returning with its verdict.

**DISCUSSION**

**A.     The District Court Did Not Abuse Its Discretion in Admitting Evidence That the Jewelry Defendant Pawned Was Stolen**

{5}     The district court's decision to admit evidence under Rule 11-404(B) and Rule 11-403 is reviewed for abuse of discretion. *State v. Otto*, 2007-NMSC-012, ¶¶ 9, 14, 141 N.M. 443, 157 P.3d 8. "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case. We cannot say the trial court abused its discretion by its ruling unless we can characterize it as clearly untenable or not justified by reason." *Id.* ¶ 9 (internal quotation marks and citation omitted). Because Rule 11-403 requires the district court to determine whether there would be unfair prejudice to the defendant if Rule 11-404(B) evidence is admitted and such a determination is "fact sensitive, much leeway is given trial judges who must fairly weigh probative value against probable dangers." *Otto*, 2007-NMSC-012, ¶ 14 (internal quotation marks and citation omitted).

**1.     Admissibility Under Rule 11-404(B) and Rule 11-403**

{6} Rule 11-404(B)(1) states, "Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Rule 11-404(B)(2) states, "This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." According to our Supreme Court, "[t]his list is not exhaustive and evidence of other wrongs may be admissible on alternative relevant bases so long as it is not admitted to prove conformity with character." *Otto*, 2007-NMSC-012, ¶ 10 (internal quotation marks and citation omitted). Absence of mistake or accident is a legitimate non-character use of Rule 11-404(B) evidence. *See Otto*, 2007-NMSC-012, ¶ 16; *see generally State v. Jordan*, 1993-NMCA-091, ¶ 16, 116 N.M. 76, 860 P.2d 206. Before admitting evidence pursuant to Rule 11-404(B), the trial court "must find that the evidence is relevant to a material issue other than the defendant's character or propensity to commit a crime, and must determine that the probative value of the evidence outweighs the risk of unfair prejudice, pursuant to Rule 11-403." *Otto*, 2007-NMSC-012, ¶ 10.

{7} Rule 11-403 states, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or

needlessly presenting cumulative evidence." "The purpose of Rule 11-403 is not to guard against any prejudice whatsoever, but only against the danger of unfair prejudice. Evidence is not unfairly prejudicial simply because it inculpates the defendant. Rather, prejudice is considered unfair when it goes *only* to character or propensity." *Otto*, 2007-NMSC-012, ¶ 16 (alteration, first emphasis, internal quotation marks, and citations omitted).

## 2.    Analysis

{8}    The State told the panel during voir dire that there would be testimony regarding stolen property and Defendant objected. The district court asked counsel to approach the bench and held a conference out of the jurors' earshot. During the conference defense counsel argued that "the charges have nothing to do with burglary or theft or stolen property" and objected to "this constant reference to stolen property." The district court pointed out that it had not yet heard any reference to burglary and asked the State whether it could prosecute its case without mentioning stolen property. The State replied that it could not, explaining that the fact that Defendant pawned stolen jewelry was "relevant to the State's case" because "it gives a motive for using a false name. This isn't just a mistake." Defense counsel insisted that "any reference to try to get a conviction by referring to other crimes or possible crimes or potential crimes" was inappropriate. The district court ruled that it would

allow the State to refer to the stolen property during voir dire: "It's a [Rule 11-] 404B issue, which also requires a Rule 403 analysis. [The State] has articulated a reason other than propensity for the evidence to be relevant."

{9} Before opening statements but after voir dire, the parties again argued this evidentiary issue, specifically with respect to the Rule 11-403 analysis. The State elaborated on its non-character and non-propensity reasons for wanting to admit evidence that the pawned jewelry was stolen:

> The State intends to use the evidence that the items were stolen for motive, for lack of mistake as far as . . . Defendant goes in using his brother's identification. When the agent . . . interviewed . . . Defendant, he did give the statement that the items belonged to his family members and [that] therefore does clearly make Ms. Curry-Hernandez's identification of the items as belonging to her mother, or her mother's estate, relevant. Additionally, Your Honor, the State intends on presenting evidence that in fact it was not . . . Defendant . . . who . . . committed the burglaries. One of the things the family did when they discovered the house was being burglarized was they put a game camera in there—a camera that automatically takes photos when movement is detected. The State intends to present photographic evidence from that game camera, which clearly shows that [the burglar] is not . . . Defendant. So, the State is in no way telling this jury that . . . Defendant was the person who burglarized the house. But [the stolen jewelry evidence] is relevant to the State's case and it is relevant to . . . the lack of mistake and intent on [the part of] Defendant."

When defense counsel disputed the proposition that the stolen jewelry evidence was relevant to Defendant's intent, the district court asked, "Wouldn't someone have a motive to conceal their own identity if they were pawning stolen items, which would

7

help support the State's assertion that the false information was provided with intent to deceive?" Defense counsel replied only that Defendant was on the surveillance footage at the pawn shop, and so Defendant's use of his brother's name and identification to hide his own identity because he was pawning stolen jewelry would ultimately be unsuccessful.

{10} The district court reaffirmed its earlier ruling, stating, "The evidence is relevant to show both motive and absence of mistake or accident." The district court continued, finding that the evidence

> is probative of those issues thus helping the State to establish the element of intent, which is a required element [and] that while there is some risk that a jury confronted with evidence that the property was stolen . . . could infer that . . . [D]efendant somehow was involved with the stealing inside, that he's either a bad person because he would steal or he would be more likely to commit the forgery because he's a person who would be involved in burglary—that while those are risks and there is some prejudicial effect to those, that the probative value of identifying a motive to deceive is greater than the prejudicial value, particularly where the State will introduce evidence that . . . Defendant was not the burglar.

As part of its case the State did introduce evidence that Defendant was not the burglar.

{11} Defendant argues that evidence of the burglaries of Ms. Curry-Hernandez's mother's home was impermissible character and propensity evidence, and that its probative value was outweighed by its unfair prejudice. We disagree. Defendant told law enforcement that the jewelry was from his deceased father's belongings. The State

properly could contradict Defendant's statement by introducing evidence from Ms. Curry-Hernandez positively identifying jewelry that Defendant pawned as her mother's, and that the jewelry had been stolen from her mother's home. Such evidence was relevant and admissible to establish Defendant's motive for and intent in misrepresenting his identity to the pawn shop owner. That is, it tended to establish that, while Defendant may not have been the burglar, he was aware that the jewelry was not from his father's estate and instead was stolen. This would explain why he would not want the pawn shop owner to know who he was and be able to trace him. Defendant was free to argue that, because Defendant was filmed by the pawn shop's surveillance camera, common sense would dictate that any use of his brother's name and identification to hide his own identity would be futile, but that is an argument for the jury and not a basis for excluding the evidence.

{12}	The district court analyzed whether evidence that the jewelry was stolen was being introduced for a non-character, non-propensity purpose under Rule 11-404(B), and whether the evidence was more prejudicial than probative under Rule 11-403. Although the district court acknowledged that there was a risk of prejudice if the jury heard the jewelry was stolen, the district court concluded that the substantial probative value of the evidence outweighed its prejudicial effect, which was mitigated by the State introducing evidence that Defendant did not steal the jewelry. We cannot

9

conclude that the district court abused its discretion in admitting the evidence where it was offered to show motive, lack of mistake, and intent. We therefore affirm the district court's admission of evidence that the jewelry was stolen.

**B.      Defendant Has Not Established a Prima Facie Case of Ineffective Assistance of Counsel**

{13}      At trial, Defendant's direct examination began as follows:

| | |
|---|---|
| Defense counsel: | Before we get to the details of this matter, let me ask you a couple of brief questions. Have you ever been convicted of a crime? |
| Defendant: | Yes. |
| Defense counsel: | What were the convictions? |
| Defendant: | I had a forgery in '89. I had a delivery of a controlled substance I believe in 2009. A theft. . . . I had a forgery in '89, I had a theft in 2009, I had a delivery in 2008, I believe. |
| Defense counsel: | To the best of your recollection, are those all of your convictions? |
| Defendant: | Pretty much, yes, sir. |
| Defense counsel: | When you say pretty much, are there other convictions and you just can't remember them or . . . |
| Defendant: | Other misdemeanors, fines, that's all the felonies, yes sir. |

Defendant argues that this line of questioning constituted ineffective assistance of counsel, because it unnecessarily disclosed to the jury Defendant's history of crimes

implicating his honesty and, in addition to its impeachment value, it indirectly would have predisposed the jury to conclude that he committed the forgery crime in question.

{14} Ineffective assistance of counsel requires that a defendant "first demonstrate error on the part of counsel, and then show that the error resulted in prejudice. Trial counsel is generally presumed to have provided adequate assistance. An error only occurs if representation falls below an objective standard of reasonableness." *State v. Bernal*, 2006-NMSC-050, ¶ 32, 140 N.M. 644, 146 P.3d 289 (alteration, internal quotation marks, and citations omitted). However, "[i]f any claimed error can be justified as a trial tactic or strategy, then the error will not be unreasonable." *Id.* With respect to the prejudice prong, "[a] defendant must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* (internal quotation marks and citation omitted). "[The d]efendant has the burden of showing ineffective assistance of counsel." *State v. Trujillo*, 2002-NMSC-005, ¶ 38, 131 N.M. 709, 42 P.3d 814.

{15} In *Bernal* our Supreme Court elaborated futher on the standard and procedure for appellate review of claims of ineffective assistance of counsel:

> Oftentimes, the record on appeal does not provide enough information to adequately determine whether an action was error or caused prejudice. When such questions arise, further evidence is often required. Rather than remand the case to the trial court for further hearings, [the appellate courts have] a general preference that such claims be brought and resolved through habeas corpus proceedings. Therefore, on direct appeal,

only when a defendant presents a prima-facie case of ineffective assistance of counsel will [the appellate courts] remand to the trial court for evidentiary proceedings.

2006-NMSC-050, ¶ 33 (citations omitted); *see State v. Crocco*, 2014-NMSC-016, ¶¶ 14-15, 327 P.3d 1068. A defendant presents a prima facie case of ineffective assistance of counsel on appeal when "(1) it appears from the record that counsel acted unreasonably; (2) the appellate court cannot think of a plausible, rational strategy or tactic to explain counsel's conduct; and (3) the actions of counsel are prejudicial." *State v. Herrera*, 2001-NMCA-073, ¶ 36, 131 N.M. 22, 33 P.3d 22 (internal quotation marks and citation omitted). "When the record on appeal does not establish a prima facie case of ineffective assistance of counsel, this Court has expressed its preference for resolution of the issue in habeas corpus proceedings over remand for an evidentiary hearing." *Id.* ¶ 37.

{16}     The State argues that defense counsel presumably chose to elicit this testimony as a matter of trial strategy: "Defense counsel could have believed this evidence would be used to attack Defendant's character, and decided to address it head on in direct [examination] with Defendant to control how it was presented to the jury." However, as Defendant points out, that scenario simply begs further questions about the reasonableness of defense counsel's decision. First, Rule 11-609(B)(2) NMRA requires that where the resulting conviction or release from confinement occurred

12

more than ten years earlier, the party offering evidence of conviction of a crime must give the other party advance notice. There is no indication in the record that the State had notified Defendant of any intent to use evidence of the 1989 forgery conviction. Second, the conviction for delivery of a controlled substance does not necessarily have a bearing on Defendant's honesty, and thus there would be a question whether evidence of that conviction could meet the requirement in Rule 11-609(A)(1)(b) that its probative value outweigh its prejudicial effect on Defendant. Therefore, one can question the reasonableness of defense counsel's decision to elicit testimony about these two convictions as opposed to simply being prepared to object on the foregoing grounds if the State tried to introduce evidence of them as part of its case or on cross-examination of Defendant.[1]

{17} The record does not reflect when Defendant was released from any confinement that resulted from his 1989 forgery conviction. Regardless, the foregoing concerns about the likelihood that the forgery and drug-related convictions could have been used to impeach Defendant persuade us that Defendant has established a prima facie case that defense counsel's decision was objectively unreasonable. To reach a final decision, it would be necessary to obtain defense counsel's explanation of what

[1] Evidence of the 2009 theft conviction likely would have been admissible pursuant to Rule 11-609(A)(2). *See State v. Martinez*, 2006-NMCA-148, ¶ 16, 140 N.M. 792, 149 P.3d 108 ("Under existing New Mexico law, theft crimes impugn a defendant's character for truthfulness.").

13

strategy he had in mind, in light of these concerns, in starting Defendant's direct examination by questioning him regarding his criminal history.

{18} However, to establish a prima facie case of ineffective assistance of counsel justifying remand for an evidentiary hearing, Defendant also must persuade us that defense counsel's decision to elicit testimony about his criminal history was prejudicial, that is, a showing of "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Bernal*, 2006-NMSC-050, ¶ 32 (internal quotation marks and citation omitted). The State presented compelling evidence of Defendant's guilt. He admitted he pawned the jewelry using his brother's identification. Defendant's brother's testimony called into question Defendant's claim that he was authorized to use his brother's identification. Defendant's explanation of how he came to be in possession of the jewelry was rebutted, and in fact the jewelry was shown to be stolen. In view of this evidence, we are not persuaded that, as a matter of reasonable probability, the result of the trial would have been different had Defendant not disclosed his criminal record.

{19} Based on the present record, we conclude that Defendant has not established a prima facie case of ineffective assistance of counsel. However, "[i]f facts beyond those in the record on appeal could establish a legitimate claim of ineffective assistance of counsel, [the d]efendant may assert it in a habeas corpus proceeding

14

where an adequate factual record can be developed for a court to make a reasoned determination of the issues." *Crocco*, 2014-NMSC-016, ¶ 24.

**CONCLUSION**

{20}     We affirm Defendant's convictions.

{21}     **IT IS SO ORDERED.**


_____

**HENRY M. BOHNHOFF, Judge**

**WE CONCUR:**


_____

**LINDA M. VANZI, Chief Judge**


_____

**STEPHEN G. FRENCH, Judge**